HORACE W. CARPENTIER *v.* GREENE W. WEBSTER.

OCCUPANCY OF COMMON LANDS BY TENANTS IN COMMON.—Tenants in common hold their lands by unity of possession, and each and every of them has the right to enter upon and occupy the whole of the common lands and every part thereof.

POSSESSION OF ONE TENANT IN COMMON. — One tenant in common has no share except that which is undivided, and has no right to exclude his co-tenant from any portion of the common lands.

OUSTER OF A TENANT IN COMMON BY HIS CO-TENANT.—If one tenant in common incloses and enters into the exclusive possession of a portion of the common lands, not exceeding in quantity the number of acres which he would be entitled to have allotted to him on partition of the whole, and refuses to allow a co-tenant to occupy this portion with him, it is an ouster of the co-tenant, and he may maintain ejectment and be let into the possession of the part from which he is thus excluded.

OUSTER BY TENANT IN COMMON.—One tenant in common may be guilty of an ouster of a co-tenant by excluding him from a portion less than the whole of the property held in common.

A REFUSAL TO LET A CO-TENANT INTO POSSESSION AN OUSTER.—If one tenant in common is in the exclusive possession of a portion less than the whole of the common lands, and his co-tenant demands of him to be let into possession of the same on the ground of his joint ownership, and the other, while admitting the several title of the co-tenant, refuses to let him into possession, this refusal is an ouster.

OUSTER MAY RESULT WHEN TITLE IS ADMITTED.—If a tenant in common denies the several title of a co-tenant, but lets him into possession, it is not an ouster; but if he admits the several title of a co-tenant and refuses to let him into possession, it is an ouster.

DEMAND OF POSSESSION BY CO-TENANT.—A demand made by a tenant in common of a co-tenant in possession to be let into possession of every part of the common lands, is not a notice to the co-tenant in possession to quit.

OUSTER BY ONE TENANT IN COMMON IN CASE OF MEXICAN GRANT NOT SURVEYED. —If several are tenants in common in a grant of land made by Mexico of a given quantity, to be located within the exterior boundary lines of a much larger quantity, and no survey or location of the quantity granted has been made, the exclusive possession by one of the tenants in common of a portion less than the whole of the land within the exterior boundary lines of the larger quantity, and his refusal to let a co-tenant into possession of the same, is an ouster.

APPEAL from the District Court, Fourth Judicial District, Contra Costa County.

The defendant recovered judgment in the Court below, and the plaintiff appealed.

The other facts are stated in the opinion of the Court.

*E. R. Carpentier,* for Appellant.

The defendant's acts amount to an ouster of the plaintiff, and the Court erred in instructing the jury that the plaintiff had failed to show an ouster.

Tenants in common possess the whole in unity. Their estate may be several—their possession must be in common. The possession of one is in support of the title of both; but the refusal of one to permit his co-tenant to enter upon and occupy the land, or any part of it, divests the possession so as to entitle the companion to his action of ejectment. (1 Greenleaf Cruise, title 20, §§2, 14, 17, 18, 19.)

" No real force, as a turning out by the shoulders, is necessary. If upon demand by the co-tenant, the other denies his right and continues in possession, such possession is adverse, and ouster enough." (*Doe* v. *Prosser,* 1 Cowp. 217.)

" If a tenant in common drive out of the land any cattle of the other tenant in common, or will not suffer him to enter or occupy the land, this is an ejectment or expulsion." (Coke Litt. 199 *b.*)

A claim of exclusive right of possession, or denial of the co-tenant's right, or any act which amounts to a denial of right, is an ouster. (*Brackett* v. *Norcross,* 1 Greenleaf, 82 ; *Allyn* v. *Mather,* 9 Conn. 128, *per* Hosmer, C. J. ; *Sigler* v. *Van Riper,* 10 Wend. 419 ; *Jackson* v. *Tibbits,* 9 Cowen, 253 ; *Edwards* v. *Bishop,* 4 Conn. 63 ; *Hargrove* v. *Powell,* 2 Dev. & Bat. 97; *Gordon* v. *Pearson,* 1 Mass. 328, etc.)

The last case (*Gordon* v. *Pearson*) is a parallel case and perfectly in point. There, as here, there was a demand of possession, and a refusal by the defendant, who says, you must get it by law if you can. And this was held a sufficient ouster.

" An ouster must be proved by acts of an adverse character, such as claiming the whole for himself; denying the title

of his companion; *or refusing to permit him to enter.*" (2 Green. Ev. 359, §318.)

Exclusive possession, for long periods, has been held both in England and the United States, sufficient to warrant the presumption of ouster, though no other proof was given. (*Doe* v. *Prosser*, and other cases cited.)

The denial of right which is held to be an ouster, is not necessarily a denial of the co-tenant's title. A denial of the right of possession or enjoyment is all that is meant by the authorities, for though the defendant admit the *title* of his co-tenant, yet if he refuse to allow him to possess, or deny his right to such possession, this would be none the less an ouster.

Moreover, the defendant's answer in this case, is, of itself, an ouster. The complaint avers title, and is verified. The answer admits the plaintiff's ownership of the undivided one half of the rancho, but denies his title to any other or greater share or interest, and unqualifiedly denies his right of possession.

The evidence shows that the plaintiff is the owner of an interest in said rancho, equal to three hundred and twenty acres in addition to the one half thereof; and the right of possession is the very question which was put in issue by the defendant, which was actually tried, and upon which judgment was rendered.

Instead of confessing the right of the plaintiff, the defendant presents an issue upon it; and as the answer has reference by relation to the commencement of the suit, the denial of the plaintiff's right is not only evidence, but conclusive proof of ouster.

As to the point so strongly pressed by counsel for the respondent, that there can be no ouster by a tenant in common, except by the exclusive, adverse possession *of the entire tract* constituting the subject of the tenancy in common, we submit, with all due respect for the learned counsel, that the proposition is wholly unsustained by any of the numerous authorities cited by him, or by any case that can be found in the books, and scarcely merits serious argument in reply.

The " claiming of the whole," which, according to Lord Mansfield, constitutes an ouster, refers to the right, and not to the boundaries—the quantity of interest and not of acres. (See Vol. 6, Allen's Massachusetts Reports; *Bennett* v. *Clemence et al.*, abstracted, quoted Vol. 3, American Law Journal, December number, 1863.)

The case from 16th Mass. approvingly cited by the counsel for the respondent, is in point for the appellant, and entirely consistent with the whole current of authority upon the subject. It decides that a tenant in common shall not do, substantially, what was done by the plaintiff in this case—that is, shall not exclude his co-tenant or disturb his possession.

I shall not criticise the language of the instruction that " an actual ouster of the plaintiff *from the joint possession* " must be shown, further than to invite to it the attention of this Court.

The language of the plaintiff's demand was carefully chosen and is not liable to criticism. He had a right to be *let into the possession* of the whole, and that was the extent of his demand. He did not demand or claim the entire possession. The rights of the defendant were fully recognized. He was informed that the plaintiff was the *chief* owner, and he was required not to yield up the possession, but to let the plaintiff into the possession and enjoyment of the premises along with himself. If the plaintiff has any right in the premises, it is the right of common and immediate enjoyment. And this right is denied him by the defendant—denied both as a matter of law, and in fact.

*Campbell & Brummagim,* for Respondent.

1st. Tenants in common are severally and solely seized each of his own share. They are seized *per my,* but not *per tout;* for this reason they must sue separately, in actions savoring of the realty. 2d. The possession of one tenant in common is, in contemplation of law, the possession of his companions. But one may actually oust the others, and claim to hold in his own right. 3d. One tenant in common has a right to the

enjoyment of the common property, and for that purpose he may enter upon it, and his co-tenants have no right to disturb such enjoyment. 4th. One tenant in common can compel the others to make partition of the common property.

The Court charged the jury in effect, that before one tenant in common can maintain ejectment against his co-tenant, he must show an actual ouster from the joint possession of the *entire* common property. In other words, that while the defendant occupied no more than his proportionate share, such possession was consistent with the common title, and in contemplation of law was the possession of the plaintiff—and therefore no ouster had been shown.

In support of the doctrine here laid down, we beg leave to refer the Court to the following well established rule of the common law. In Coke upon Littleton, (Vol. I, p. 906,) Littleton lays down the rule in these words: "Also, *in the case aforesaid, as if two have an estate in common for term of years,* (for one year, half a year, etc.,) *the one occupy all, and put the other out of possession and occupation, he which is put out of occupation shall have against the other a writ of* ejectione firmæ *of the moiety, etc.*" Upon which Lord Coke comments as follows: "*The one occupy all, and put the other out of possession.* These are words materially added; for albeit one tenant in common take the whole profits, the other hath no remedy by law against him, for the taking of the whole profits is no ejectment. But if he drive out of the land any of the cattle of the other tenant in common, or not suffer him to enter or occupy the land, this is an ejectment or expulsion, whereupon he may have *ejectione firmæ* for the one *moiety,* and recover *damages* for the entry, but not for the mesne profits." How materially added? Before the rule laid down in the text, albeit one tenant should take the *whole* profits, the other had no remedy by law against him, for the reason that it was no ejectment; wherefore, it was added, that although there was no remedy for taking the *whole* profits—that is to say, the profits of the *whole estate*—yet, if he should *occupy all*—that is to say, the entire estate—the co-tenant should have his

remedy by "*ejectione firmæ*" for his *moiety:* namely, for his undivided interest.   The acts from which an ejectment or expulsion might be inferred are stated thus: "But if he drove *out* of the land any of the cattle of the other tenant in common, or do not suffer him to enter or occupy the land, this is an expulsion."   The words "out of the land" means out of the land owned in common; because, if one tenant occupied a portion with a garden, and the cattle of the other entered it, and they were driven out of the garden but not out of or from the common estate, it could not be contended that the owner of the estate would have his action of ejectment against his co-tenant, the effect of which would be that the cattle should be again let into the garden from which they had been driven. So with the other words, "*or not suffer him to enter or occupy the land.*"   What land?   Why, clearly, the common land; because, if one tenant occupied—say as in case of the cattle— a mere garden spot, and refused to allow his co-tenant to disturb him in its occupancy, but leaving him all the residue of the common property upon which to enter, could such act be construed into a refusal on the part of one to allow the other to enter and occupy the land?   Most clearly it could not. And we shall hereafter demonstrate, as we think beyond question, the consistency of our construction of this rule of the common law, with another maxim, namely : that the *possession* of one *tenant in common* is the *possession* of all, and that the latter was intended to enable tenants in common to occupy and enjoy their common estate in severalty, and before partition could be made, without losing any of their rights, and without incurring any of the consequences that result from an adverse possession.

And again, (see page 907,) the same author goes on to say : "In the same manner it is where two hold the wardship of the lands or tenements during the nonage of an infant, if the one oust the other of his possession, he which is ousted shall have a writ of ejectment *de gard* of the moiety, because that these things are chattels real, and may be apportioned and severed."   Ousted of what possession?   Why, manifestly, of

the *entire* possession of such lands and tenements, not of a *part,* but of the whole; that is, of "*all*" the lands so held in common. And the reason of the rule assigned by the author is, that such things, he says, are chattels real, and may be *apportioned* and *severed.* This has reference to the writ of partition which, although it is a writ of right, yet a tenant out of possession is not entitled to it. (In this particular our statute adopts the common law rule; it will, however, be shown that even an adverse holding of a fraction of the common property by one tenant will not prevent partition, if the other is in possession of any part of the common property.) In order, therefore, that this right of apportionment and severance by writ of partition shall not be defeated by the mere ouster of one tenant by the other from the possession of the entire property, it is provided that in all such cases the tenant *ousted* shall have his ejectment, for the purpose of restoring to him not only the possession, but the right on his part to *compel* partition of the common property. If a tenant out of possession could still compel partition, the remedy by action of ejectment for his undivided moiety would be without an object and useless. It may be stated that, as a general rule, ejectment will not lie by one tenant in common against his co-tenant, in any case where the remedy of partition exists; because, as long as there is no disseizin, the estate is still in common, but when a disseizin takes place, the estate ceases to be in common. The action of ejectment is therefore for the purpose of bringing the estate back into common, thereby preparing it for partition, which ought to be the first process. But when there is no disseizin, a co-tenant's remedy is by petition for partition.

Since the enactment of the statute 3 and 4 W., (see Adams on Ejectment, 136,) the rule of the common law requiring proof of actual ouster in actions of ejectment, brought by tenants in common against their co-tenants, has been dispensed with; or, in other words, a different rule has been adopted. This statute enacts that when any person entitled to any land or rent as tenant in common shall have been in possession or

receipt of the entirety, or more than his undivided share of the land or rent, for his own benefit or the benefit of any person other than the person entitled thereto, such possession or receipt shall not be deemed to have been the possession or receipt of the person so as aforesaid entitled.

"It follows," the learned author says, "as a corollary from this enactment, that one joint tenant, co-partner, or tenant in common, may always maintain ejectment against his companion, who is in possession of more than his share of the land, or receipt of more than his share of the rent; because such possession is no longer the possession of his co-tenant." (See Adams, 137.)

Now, while the English statute is not in force in this State, the common law, as it stood when that statute was enacted, is in force.

That statute changed the rule of the common law to this extent: 1st—It provided that one co-tenant might maintain ejectment against his companion who was in possession of less than the entirety; 2d—It changed the common law rule of evidence on the question of ouster, making the possession of one co-tenant, when it was for more than his share, evidence of ouster to that extent. The remedy applied by the statute indicates clearly the extent and reason of the change, because, before its enactment under the common law, one co-tenant could not maintain ejectment against his companion unless he was in possession of the entirety, on the ground that a possession of less than the entirety could not be deemed or treated as an adverse possession, which, under the common law, is an essential ingredient in the proof of ouster. And again, as to what constituted ouster under the common law, it is said that many subtle distinctions had been taken, and the statute was intended to provide a remedy in this particular, rendering the proof more simple and certain. The statute, however, left the common law as it stood before its enactment, so far as it relates to a co-tenant occupying no more than his share, which, under no circumstance, neither by the statute nor by the common law, can be tortured into an adverse possession. No

stronger evidence could be adduced of the correctness of our position than is afforded by this English statute; because, if a co-tenant could have maintained ejectment agains his companion when he was in possession of less than the entirety, and if such possession would have been adverse, then there would have been no necessity for the remedy provided by the statute, for the simple reason that there was no inconvenience in the rule as it stood at common law. Besides, we look in vain for any case, either in England or America, and the counsel for the appellant have failed in their researches to find or to point us to a single case where one tenant in common maintained ejectment against his fellow, where the possession extended to no more than his share.

And we here particularly wish to direct the attention of the Court to the pregnant fact, that all the cases cited for the appellant to show that he had been ousted are where one co-tenant undertook to claim and dispose of the whole property, or denied the title of the demandant to any part of the common property.

But we are here met with another maxim of the common law, and which is the sole foundation upon which the appellant rests his right to maintain his present action. It is said that the occupation of tenants in common is undivided, and that neither of them knoweth his part in several. (See 5 Bacon's Ab. 240.)

What is the true meaning of the term *undivided occupation?* In order to arrive at the sense in which this term or maxim of the common law is used, let us refer to another maxim, namely, that all the tenants have a right to enter upon the common property and occupy the same; and again, it is said that one tenant in common has no right to disturb his co-tenant in his enjoyment of the common property. When, therefore, we come to harmonize these maxims of the common law, and to make them consistent the one with the other, and to preserve the rights which they are intended to confer, we must be governed by a practical common sense view of the whole subject, and give to the terms used rather an enlarged construction,

suited to the condition of the country, than that narrow and technical one which the appellant relies and insists upon.

When it is, therefore, said that their occupation is undivided, it certainly does not mean that all the tenants shall occupy the same precise space at the same moment of time, because that would imply a mathematical absurdity. Neither can it mean that if one is occupying a particular spot, that his fellow may insist upon occupying that precise locality, for that would be disturbing him in his possession and enjoyment of the common property. The occupation must, therefore, to preserve its *unity*, and to give to each his proportionable share of the occupation and enjoyment of the common property, be in its very nature several; because there can, physically speaking, be no such thing as an *undivided occupation* of a single spot of ground by two or more persons at the same time, except in theory, or, more properly speaking, except as a legal fiction. And this legal fiction of undivided occupation was invented to preserve what is called the *unity of possession*, which is the only *unity* belonging to tenancies in common. Hence it is said that the possession of one tenant is the possession of his companions also. So, if one enters under the common title, he enters for all, and although the others may never enter at all, still the occupation is undivided, the *unity of possession* is preserved, and if they all enter and occupy in severalty, such occupation is undivided. It is, therefore, only when one ceases to claim under the common title, denies the title of his co-tenant, and ousts him from the possession of the entire common property, that this theoretical *unity* of possession is destroyed, and the presumption of law that the possession of one is the possession of his fellow, ceases to exist.

That all the tenants should occupy separate and distinct parcels, and at the same time preserve the *unity* of possession, seems to have resulted from a practical and useful necessity growing out of the occupation of estates held in common; because, if the possession of one did not inure to the benefit and protection of all, there could be no such thing as either the peaceable enjoyment or the improvement of such property,

but there would be a perpetual conflict and a perpetual contest betwixt the tenants in regard to every part and parcel and fraction of the entirety. From what has been said, it would seem to follow that the general right of each tenant, legally flowing from the nature of the estate, should be deemed to fall within the application of the maxim, " *sic utere tuo, ut alienum non lœdas ;*" and that neither should so occupy the common property as to injure or entirely destroy the rights of the others. In this there is a species of severance, but it is a severance which does not destroy or affect the *unity* of possession, but, on the contrary, preserves and defends it, and at the same time harmonizes all the other elements of this peculiar estate, giving to the joint owners of land not only a beneficial but a peaceable enjoyment of their respective interests. And again, it is said that neither knoweth his part in several ; and from this maxim it is argued that a several occupation amounts to a practical severance by metes and bounds. If such occupation were not the occupation of all the other tenants, then it might be urged, with great show of plausibility, that the party so occupying was by his own act making partition of the common property. The right to enter carries with it the right to occupy ; but the exercise of this right does not imply that the spot chosen for such purpose is the part selected as the *several* share of such occupant, but it is a mere temporary location, liable to be changed when partition is made ; and until partition shall have been made, neither can know his part in several. It is essential to an estate in common to be subject to partition, but Courts, regarding all equities which may exist between the parties, will, in decreeing a partition of the common estate, see that the partition does not lessen any part of the estate in value, (see 1 P. Wm. 446,) and if one tenant has made valuable improvements on the part occupied by him, if it can be done without injury to others, such division will be made as to give him the benefit of his improvements, and even in such cases, recompense in money is made to those who occupy the part of less value. Thus it will be seen that Courts in making final partition of the common prop-

erty betwixt the tenants, recognize the principle we are con-
tending for in this case, namely, a *several occupation* of the
common property before partition.

The appellant has failed to point us to any authority, either
English or American, where the action of ejectment was main-
tained by one tenant in common against his co-tenant for an
ouster for a mere moiety of the common property; and we
now refer to the authorities cited by the appellant when this
case was submitted, and which we claim establish beyond con-
troversy that the ouster must be from the *whole* of the com-
mon property.

The English authority cited by the appellant is the case of
*Fisher & Taylor* v. *Prosser*, 1 Cowper, 217.   The Court will
see that the ejectment in that case was for the entire common
property.   Lord Mansfield, in defining the essential points
necessary to constitute ouster, says: "So in cases of tenants
in common; the possession of one tenant in common, *eo nomine*,
as tenant in common, can never bar his companion; because
such possession is not adverse to the right of his companion,
but in support of their common title; and by paying him his
share he acknowledges him his co-tenant.   Nor, indeed, is a
*refusal of itself* sufficient, without *denying* his *title*.   But if,
upon demand of the co-tenant of his moiety, the other *denies
to pay*, and denies his title, saying he claims the whole and
will not pay, and continues in possession, such possession is
adverse, and ouster enough."

The rule here laid down may be treated as the settled Eng-
lish doctrine on the question of ouster, from the time of its
announcement down to the enactment of the statute of W. 4,
to which reference has been made, and we submit that it sus-
tains the views we have urged to the fullest extent.

First, it is necessary that when a demand is made, it must be
for the *precise moiety* the other denies or refuses to pay, and
*denies* his *title*, that is, his title to the common property, saying
he claims the *whole*, that is, in the language of Littleton, " *all*,"
and continues in possession; this, the learned Judge says, is
adverse and ouster enough.   Nothing could be clearer, because

to entirely preclude the idea that the occupancy of a *part* only could be construed into an ouster. He says, that the possession of one tenant in common, *eo nomine*, can never bar his companion, because it is not adverse, but is in support of the common title. The case at bar falls clearly within this rule. The respondent claimed merely as a tenant in common, and his possession never could be adverse, but must, therefore, be in support of the common title. He admitted the co-tenancy of the appellant, and never denied his title even by implication.

So in *Helling's Case*, 11 East. 50, it is said, one tenant in common in possession *claiming the whole*, and denying possession to the *other*, is sufficient evidence of an ouster.

So, in *Doe* v. *Wawn*, 3 M. &. W. 339, it was held that, where property owned by four tenants in common, the property being covered with houses, and three of the tenants leased the premises for ninety-nine years to a railroad company, and the company pulled down the houses and constructed a railroad upon their site, against the wish of the other tenant, that such occupation was sufficient evidence of ouster, and this decision was made on the ground—1st, of the rule laid down by Littleton, namely, "that if one tenant in common occupy the *whole* and put the tenant out of *possession* and *occupation*," it is sufficient evidence of ouster; and, 2d, on account of the peculiar use which the other tenants, through the railway company, made of the entire premises, being of such a character as to exclude the co-tenant from *occupying* the land. Such acts, the learned Judge says, would be as effectual an exclusion as if the defendant had been prevented from entering and occupying in person.

The broad principle which runs through all the cases is here again asserted, namely, that it must be an *exclusion* from the *whole* of the common premises, amounting to an absolute denial of title, in order that one tenant may maintain ejectment against his companion, on the ground of ouster.

The appellant has cited us to *Brackett* v. *Norcross*, 1 Greenleaf, 89, as an authority which he claims is strongly in his favor. The learned Judge, in discussing the question of ouster,

says : " On adverting to the evidence as reported by the Judge who presided on the trial we find, ' The agent of the demandant had repeatedly demanded possession—the defendant uniformly refused to admit the demandant to enter, or to suffer demandant's agent to occupy—he also *denied demandant's title, and has ever since held the exclusive possession and occupation.*' " Upon the facts as reported it was held that they afforded sufficient evidence of ouster. The Court will perceive by a perusal of this opinion that the same English authorities to which we have already referred, are quoted and relied upon, particularly the case in 1 Cowper, 217, and great stress is laid on the words, " *denies his title, saying he claims the whole.*"

How widely the facts of this case differ from the case at bar. The language is, " he denied demandant's title, and has ever since held *exclusive possession* and *occupation.*" (*Fredeck* v. *Gray,* 10 S. & R. 188 ; *Valentine* v. *Northrop,* 12 Wend. 495 ; *Sigler* v. *Van Riper,* 10 Wend. 419 ; *Mumford* v. *Brown,* 1 Wend. 52 ; *Keay* v. *Goodwin,* 16 Mass. 3 ; *Marcy* v. *Marcy,* 6 Pick. 372 ; *Ord* v. *Chester,* 18 Cal. 77.)

We insist that in order to establish an ouster by one cotenant of his fellow, upon proof of a demand for possession and a refusal to comply, a demand for the *precise* moiety or share which the co-tenant claims is indispensable.

The reason of this rule must be apparent to all. In the first place a refusal of the co-tenant in possession to allow another to enter, is, as a general proposition, based upon a denial of the demandant's title to any part of the demanded premises ; and this denial of title, we shall be able to show, is one of the chief, if not indispensable requisites in the proof of ouster. The necessity, therefore, that the party making the demand should specify the precise share which he claims, in order that the extent of his demand, as well as the consequences of his admission into the possession may be fairly understood by both parties, would seem to be too clear a proposition for argument. But, again, while the party in possession might be willing to admit the demandant, provided he claimed no

68

more than his share, he might be very unwilling to admit him if he claimed more than his share; and if he did demand more, and the tenant in possession refused, and even denied his title to the extent claimed, such refusal and denial would not constitute ouster; but, as in the case at bar, where the extent of the demandant's interest is designated by the words "*principal owner*," leaving the extent of his claim entirely indefinite, undefined, and uncertain, we hold that no reply that could be made to such a demand, should be held to constitute proof of ouster.

On this point we shall first refer to the case of *Fisher & Taylor* v. *Prosser*, 1 Cowp. 218. Lord Mansfield says: "But if upon the demand of the co-tenant of his *moiety*, the other *denies to pay*, and *denies* his title, saying he claims the *whole*, and will not pay, and continues in possession, such possession is adverse and *ouster* enough." The language here used leaves no doubt as to its meaning; that is, there must be a demand for the precise "*moiety*." Now it must not be said that the term "*moiety*," as here used, has reference solely to a demand of the rents and profits, and not to a demand of his share of the common property; because the reason why it should apply to the latter as well as to the former is the same, namely, that the party in possession may clearly understand the nature and extent of the demand made upon him, in order that he may give an intelligible reply, and that he may not be deceived or misled by an ambiguously, cunningly worded demand, intended to provoke a refusal, for the express purpose of making proof of ouster when none exists. Littleton, too, as we have before seen, in speaking of the remedy of one co-tenant when he is put out of occupation, says, he should have against the other a writ of *ejectione firmæ* of the *moiety*.

In *Colburn* v. *Mason*, 25 Maine, 434, the rule seems to be clearly laid down that should be adopted in the case at bar. The proof was that the demandant, to show a disseizin, had read to the tenant in possession the description in his deed of a *fourth part* of the premises, and the witness said to him, "These are the premises you are in possession of." The answer

was " Yes ; it is hard to pay twice." Upon this statement of the facts it was held that no ouster had been proved. The Court say that it was incumbent on the plaintiffs to show that the defendant denied their *right* to the possession, or that he did some other notorious act indicative of holding adversely to them, and that the evidence did not establish anything of the kind. And again, they say that not a word escaped his lips tending to a denial of the demandant's *right* as a co-tenant, and that what he said could not amount to an *unequivocal* denial of the demandant's *title*.

It will, in the first place, be seen that the *precise share* of the demandant was stated, and, in the next place, it is laid down as a rule that the reply must amount to a denial of the demandant's right as a co-tenant, and, in the language of the opinion, "an unequivocal denial of the demandant's *title*." Did the reply of the respondent in the case at bar amount to or even tend to show a denial of the appellant's title? His statement was, " that he owned an interest in the rancho, and was in possession of no more than he was entitled to, and that he could not let Mr. Carpentier into possession unless at the end of a lawsuit." In construing this reply, we must keep in view the nature of the demand, which was, that he, Carpentier, was the "*principal owner*." The adjective " principal," as used on that occasion, meant that he was the *chief* owner, or, in fact, that he owned pretty much all of the Rancho of San Ramon, and he demanded "to be let into the immediate possession and enjoyment of the same, and of every part and parcel thereof." To this demand the respondent refused to comply ; but he did not deny the right of Carpentier as a co-tenant ; he did not deny his title ; but he merely insisted, as he owned an interest, as he was in possession of no more than he was entitled to, that he could not surrender up the entire possession of the premises, because the language in which the demand was couched lead inevitably to one of two conclusions, either that if he did comply with the demand, Carpentier would take possession of the chief part of his house as well as of his field, or that he intended to turn him out altogether. He

wanted immediate possession and enjoyment of every part and parcel of the premises. No more comprehensive language could have been used in making a demand for the sole possession of the entire premises. He did not say, " I am the owner of the undivided one half of the Rancho of San Ramon, and I desire to be let into the possession with you to the extent of my interest." If such a demand had been made, then the respondent could have answered understandingly; knowing the precise interest claimed, he could then have given him possession of one half his house and half his field, pointing out the particular parts he should occupy; and this, if the rule laid down in *Mumford* v. *Brown,* be law, would have been all that he was entitled to. How essential, therefore, it is, that the party making the demand should specify the precise moiety he claims.

So in *Marcy* v. *Marcy,* it is said, " the demandant claimed of the tenant his *share* of the demanded premises, and requested the tenant to yield it up." Not to yield up every *part* and *parcel* of the premises, but to yield up his share.

In *Bernard* v. *Pope,* 14 Mass. 438, it is said, " But every dispossession does not amount to a disseizin, especially of tenants in common. For the possession of one is the possession of all, unless by an actual ouster, or an exclusive pernancy of the profits against the will of the others, one shall manifest an intention to hold the land by wrong rather than by the common title. But without such overt acts, or a sale and exclusive possession for more than twenty years, so that the right of entry shall be gone, a disseizin is not to be presumed."

So in *Prescott* v. *Nevas,* 4 Monroe, 330, it is stated that one tenant in common may disseize another, but the difference is that acts done by a stranger, which would *per se* be a disseizin, are, in the case of tenancies in common, susceptible of explanation consistently with the real title. And acts of ownership by tenants in common are not necessarily acts of disseizin. The law will not presume that one tenant in com-

mon *intends* to oust another, the intent must be established
in proof.

By the Court, SHAFTER, J.

This is an action of ejectment, brought by one tenant in
common against his co-tenant, for the recovery of an undivided
share of a part of the common property. The plaintiff alleges
in his complant, that on the 1st day of September, 1858, he
was seized as owner in fee, and was entitled to the possession
of a certain tract of land, describing it as a tract half a mile
square and situate in the County of Contra Costa; and that
he is still the owner and entitled to the possession thereof.
The plaintiff further avers that afterward, to wit, on the day
first aforesaid, the defendant entered upon and took unlawful
possession of said premises, and wrongfully excluded the plain-
tiff therefrom, and still continues so to exclude him therefrom,
and from the pernancy of the rents and profits thereof, to his
damage in the sum of five thousand dollars; that the said
premises are parcel of the Rancho of San Ramon, granted by
the Mexican Government to Mariano Castro and Bartolo
Pacheco, and that plaintiff has title to said premises under
said grant.

The answer avers that the rancho referred to in the com-
plaint, contains eight thousand eight hundred acres; that it
has never been partitioned, and that ever since the date of the
grant, the rancho has ever been and still is held, owned, and
possessed by the original grantees, Castro and Pacheco, and
their heirs and vendees, as tenants in common. That on the
9th day of March, 1860, the defendant became the owner in
fee simple absolute, by title derived from Pacheco, of one
undivided eightieth part of said rancho; that the defendant
has ever been, since the 1st day of September, 1858, in pos-
session of about sixty acres of land, parcel of the one hun-
dred and twenty-nine acres described in the complaint, claim-
ing title thereto; and that the one eightieth, to which he
derived title from Pacheco, March 9, 1860, as aforesaid, equals

one hundred and ten acres. That plaintiff owns an undivided half of the larger tract, by title derived from Castro, and no more. The ouster alleged is denied, and the damage also.

It appeared at the trial that the grant to Castro and Pacheco was of two leagues lying within exterior boundaries containing six leagues. That the grant had been finally confirmed, but that there had been no survey or segregation. The title of the defendant, as stated in his answer, was admitted; and the plaintiff having introduced evidence tending to prove the value of the use and occupation since September 1, 1858, for the purpose of proving the ouster alleged in the complaint, called James T. Stratton as a witness, who testified as follows:

"I am a surveyor; am acquainted with the Rancho of San Ramon; know the lands described in the complaint; they are part of the Rancho of San Ramon and are embraced within the lands described in the petition, decrees of confirmation and deeds put in evidence by the plaintiff. About the 19th of December last, the plaintiff and I were on said rancho together. We went there for the purpose of examining the rancho with reference to the final survey thereof, which I was making under instructions from the United States Surveyor-General. On that occasion I saw the defendant at his residence, on the premises in controversy. [A paper marked 'Exhibit No. 1,' is shown the witness.] A notice, of which this is a copy, was then served by the plaintiff upon the defendant. In addition to this written demand, the plaintiff then and there made a verbal demand of the defendant to be let into the possession of the land, with the defendant."

*Question*—"Did the defendant accede to said demand by the plaintiff?"

*Answer*—"The defendant did not accede to said demand. He said he owned an interest in the ranch, and was in possession of no more than he was entitled to, and that he could not let Carpentier (the plaintiff) into the possession, unless at the end of a lawsuit, or words to that effect."

*Question*—"When the defendant said that he was an owner

of an interest in the rancho, what, if anything, did the plaintiff reply?"

*Answer*—"I think he said: 'I suppose you are, but that does not entitle you to keep me out of the possession, also,' or words to that effect. The defendant positively refused to let the plaintiff into the possession. I do not recollect the exact words, but I know he was very positive."

*Cross Examination*—"This conversation took place within the inclosure of the defendant, near his house."

*Question*—"Was the verbal demand substantially the same as the written one?"

*Answer*—"It was substantially the same. The plaintiff demanded to be let into possession of the lands occupied by the defendant, and the defendant refused. The defendant's house is situated about the middle of the rancho. There is embraced within the limits of the *diseño* referred to in the decree of confirmation, about six leagues of land, and the land occupied by the defendant is about one four hundredth part of the six leagues, and about one one hundred and thirtieth part of two leagues."

Plaintiff here put in evidence the copy of written notice of demand, marked "Exhibit No. 1," which is as follows:

"SAN RAMON, December 20, 1862.

"To GREENE WEBSTER: Sir—You will please take notice that the lands and premises now occupied by you are parcel of the Rancho of San Ramon, of which I am the principal owner, and I demand to be let into the immediate possession and enjoyment of the same, and of every part and parcel thereof.

"Respectfully yours,
"H. W. CARPENTIER."

And here the plaintiff rested.

It appeared from the testimony introduced by the defendant, that the land in dispute, when he first entered upon it, was in a wild state, and that he had added very much to its value by

cultivation and by erecting buildings thereon. The ·cause was then submitted, and the Court instructed the jury that· " the parties were tenants in common of the Rancho San Ramon; that the defendant was in possession of about sixty acres thereof, described in the complaint; that the plaintiff, to recover against the defendant must show that the latter had actually ousted him from the joint possession of the premises; and that the plaintiff had introduced no evidence tending to prove such ouster, and that defendant was therefore entitled to a verdict." To this instruction the plaintiff duly excepted.

Thereupon the jury, under the said instruction, rendered a verdict for the defendant, and judgment was entered.

It is insisted by the counsel for the respondent, that the instruction that the plaintiff " had introduced no evidence tending to prove an actual ouster," was correct, and on either one of two grounds—first: for the reason that the defendant had a right to the exclusive possession of the sixty acres demanded, on the ground that sixty acres was less than his share; or, second : if he had no such exclusive right, still the exclusion of the plaintiff did not amount to a disseizin—and for two reasons, which will be stated hereafter.

First—Had the defendant a right to the exclusive possession of the sixty acres, on the ground that it did not exceed his share ?

As the case does not show that there had been any partition between the parties, and as it does not disclose a lease from the plaintiff to the defendant, nor any agreement or license to occupy, it follows, that if the defendant had the exclusive right asserted, its source must be found in the law of the relation that existed between the parties as tenants in common.

A tenancy in common is where two or more hold possession of lands or tenements at the same time by several and distinct titles. The quantities of their estates may be different; their proportionate shares of the premises may be unequal; the modes of acquiring their titles may be unlike, and the only unity between them be that of possession. Thus one may hold in fee and another for life ; one may acquire his title by

purchase, another by descent; one may hold a fifth, another a twentieth and the like. (2 Bl. Com. 191; Co. Lit. 189 A.) Tenancies in common differ in nothing from sole estates, but the blending and unity of possession. (2 Bl. Com. 194.) " Neither of the co-tenants knoweth his own severalty, and therefore they all occupy promiscuously. Tenants in common are they which have lands and tenements in fee simple, fee taile, or for term of life, etc.; and they have such lands or tenements by several titles, and not by a joint title; and none of them knoweth of this his severall, but they ought by the law to occupie these lands or tenements in common, and *pro indiviso*, to take the profits in common. And because they come to such lands or tenements by severall titles, and not by one joint title, and their occupation and possession shall be by law between them in common, they are called tenants in common." (Litt. 188 *b*.) Coke, in commenting upon the foregoing passage, remarks as follows: " The essential difference between joint tenants and tenants in common is, that joint tenants have the land by one joint title and in one right, and tenants in common by severall titles, or by one title and by severall rights; which is the reason that joint tenants have one joint freehold, and tenants in common severall freeholds. Onely, this propertie is common to them both, viz: that their occupation is undivided, and neither of them knoweth his part in severall." (Coke Litt. Sec. 292.) In section three hundred and twenty-three it is stated that " each of the tenants in common may enter and occupy in common, *per my et per tout*, the lands and tenements which they hold in common;" and this notwithstanding they are severally seized.

From these citations it is manifest that by the very law of the relation existing between tenants in common, each and every of them has the right to enter upon and occupy the whole of the common lands and every part thereof. The rule that tenants in common hold their lands by unity of possession inculcates something more than the technical truth that the possession of one tenant is *prima facie* the possession of the other. In our judgment it also involves the doctrine that the

tenants, respectively, have a right to enter upon the whole, and upon every part of the whole land, and to occupy and enjoy the whole and every part of it, and that the tenants, respectively, are restrained by correlative obligation, from resisting an exercise of this right in either of its branches. The citations from Littleton go directly to this conclusion : " They (the co-tenants) *ought* by law to occupy their lands or tenements in common." " Their occupation and possession *shall be* by law between them in common." " One tenant in common has a *right* of enjoyment of the common property." (2 Bon. In. 314.) These quotations are wholly irreconcilable with the idea that one tenant in common, as such, can have the right to exclude his co-tenant from any portion of the common lands in advance of partition. Before partition, a tenant in common has no share, except one which is undivided ; and that he cannot possess in severalty, for the reason that it is undivided ; and furthermore, he " knoweth not of this, his severall." The only unity between tenants in common is the unity of possession, and if each man knew and could designate his part in severalty, without partition, "even this unity would soon be destroyed." (2 Bl. Com. 192.) He who has no right to possess, except in common with others, in claiming the right to possess solely any part of that to which the common right extends, utters a solecism.

Counsel insist that " while the defendant occupies no more than his proportionate share, such possession is consistent with the common title, and therefore, his possession is no ouster." It is true that the bare occupation of the sixty acres by the defendant is not inconsistent with the common title ; but couple with that occupation a refusal on his part to allow the plaintiff to enter upon and occupy the sixty acres with him, and we have then a possession in him that is not consistent with the common title, and which, therefore, does amount to an ouster.

But counsel rely upon authority " to demonstrate that tenants in common can [as matter of right] occupy and enjoy their common estate in severalty before partition, and without

incurring any of the consequences that result from an adverse possession." We have examined the cases referred to, and fail to find in them any traces of the doctrine contended for. In *Mumford* v. *Brown*, 1 Wend. 52, it was adjudged simply that "a tenant in common, hiring the share of his co-tenant, and continuing in possession at the expiration of the term, doing no act to prevent the co-tenant from occupying with him, is not liable to double rent as holding over, though notice to quit has been given." In *Kray* v. *Goodwin*, 16 Mass. 1, the only point decided was that "if the tenants in common, *by agreement*, occupy separate parts of the common property, trespass will lie by one of them against the other who removes personal property of the former therefrom against his will." And it is undoubtedly true, as suggested by Mr. Justice Wilde, in the opinion, that where there has been no agreement for separate occupation, neither of the tenants would have a right to remove the property of the other from the common lands against the will of the owner. But there is nothing in all this that has the slightest relation to the point here made for the respondent. Because one tenant cannot assault another, or interfere with his goods with impunity, it certainly does not follow that one can occupy a part of the common lands and exclude his companion therefrom, even though the part should not exceed the tenant's share. In *Marcy* v. *Marcy*, 6 Met. 360, one of the points adjudged, having to do with tenancies in common, is the following: "Where one of two tenants in common of lands conveys the whole estate to A. by a deed, with warranty, and A. enters, claiming title to the whole, and on being requested by the co-tenant to give up a moiety thereof, refuses so to do, and declares that he will stand a lawsuit before he will give it up, there is an ouster of the co-tenant which will entitle him to maintain a writ of entry." Obviously, there is nothing in this judgment bearing upon the particular question now under consideration; nor is there any argument, illustration or remark in the opinion that touches it. These are the only cases to which we have been referred as being opposed to the doctrine that a tenant in common

does not and cannot "know his severall" in advance of partition, and in our judgment those cases do not make that possible which is declared to be impossible by the maxim. There is no decision nor saying, in the books, that questions the universality of the maxim, or that suggests any ground of assurance that if the rule were otherwise, the premonition of Blackstone that "the unity of possession would soon be destroyed," would not be speedily realized in the fact. We close the discussion upon this point by remarking, that the general principle as stated in Littleton has been reasserted in the broadest terms by a recent text writer: "Each owner in respect to his share has all the rights, *except that of sole possession,* which a tenant in severalty would have." (1 Wash. R. 416.)

On the grounds stated, we consider, that if there was no ouster proved at the trial, it was not for the reason that it appeared, by legal conclusion, that the defendant had a *right* to the sole possession and enjoyment of the sixty acres, they being no more and "less, even, than his share."

Second—But, assuming that the defendant had no exclusive right to the possession of the sixty acres, it is insisted that there was still no ouster, and on the ground of either one of two reasons. It is said, first, that one tenant in common cannot, by legal possibility, be ousted by another, unless the ouster be of the whole of the property held in common; or, if the law be otherwise, then secondly, that there can be no ouster without a denial of title; and that there was, in this case, no such denial, but, to the contrary, the plaintiff's title was formally acknowledged.

1. Is an ouster of one tenant in common by another, from less than the whole breadth of the common lands, impossible as matter of law? The learned counsel maintains that such an ouster is impossible; we consider that it is not, and shall proceed to state the reasons why. The question will be treated both upon principle and authority.

The position of counsel is not in keeping with some of the views expressed in argument. In discussing the proposition

which we have just dismissed, it was urged that "while the defendant occupied no more than his proportionate share, such possession was consistent with the common title, and in contemplation of law was the possession of the plaintiff, and therefore was no ouster." Now, this involves an admission, that if one tenant, of his own head, should take up and hold in severalty *any more than his just share of the common land,* and exclude his co-tenant therefrom, it would (particularly if the title were denied) amount to an ouster; and it follows that it is possible that one tenant may oust another, to a legal intent, without ousting him of the whole of the lands.

Further: In the passage above quoted, and elsewhere, counsel maintains that whether any given act will amount to an ouster, must depend upon whether the act is or is not consistent with the common title; that is, consistent with the common right to occupy and enjoy, for beyond that, there is, as to tenancies in common, no common title. This generalization is advanced as a test, by which to determine whether a tenant has or has not been ousted as the result of any given act; and we accept the test as being generally correct. It follows, then, that whether the exclusion of one tenant by another is from the whole of the land, or from only a part of it, is a matter of entire indifference; for the partial exclusion no more consists with the common right to occupy than the total exclusion. The act done, in the one case, is of the same essential character as the act done in the other. In both cases the result reached is the same—tortious exclusion—and the only difference between the cases is, that in the one the wrong is more extended than it is in the other. But that difference lies in circumstance and not in principle; and it follows, by the very point of the agreed test, that an ouster of a part of the common land by one tenant in common, of another, is legally possible. The test may be fallacious; but assuming its correctness, the position of counsel is a mistaken one, unless, indeed, it can be successfully contended that, while total exclusion, accompanied (if needs be) with a denial of title, is inconsistent with the common title, that partial exclu-

sion, accompanied (if needs be) with a like denial, is consistent with it.   And we here remark, to avoid all chance for misapprehension, that we are not considering now whether there can be an ouster without denial of title; for present purposes the necessity of such denial may be taken as admitted.   The question is, simply, whether an ouster by one tenant, of another, of less than the whole of the common property, can be accomplished by any means.

But further: He who asserts that one tenant in common cannot oust a co-tenant of a part of the common lands, asserts that there may be a case, having all the essential characteristics of an ouster, which must fail not only of apt and appropriate remedy, but of all remedy, either at law or in equity. Partition would afford no redress for the dispossession, whether total or partial.   In the first place, the tenant expelled might not desire a partition; and it is possible that a partition would be equally unwelcome to the co-tenant who expelled him.   In the second place, partition does not lie between tenants in common at common law (2 Bl. Com. 182, 191,) and we are now treating the subject on common law conditions only.   And in the third place, partition in equity is not for the purposes of redress for ousters, nor for any description of legal wrong previously committed; but for the sole purpose of terminating the common tenancy.   By the common law the ejected tenant was not only entitled to be restored to his moiety, but to damages also.   (Coke Litt., Vol. I, p. 906.)   In chancery in partition cases there is no account taken of damages, but of mesne profits only.   (1 Story's Eq., Sec. 466.)   If the position taken is correct, we have then, not only a distinction without any substantial difference, but a wrong, by exact definition, which knows no redress.   Nor does the incongruity stop here; for the wrong which is fully redressed, is identical in every material particular with the wrong which may be committed with impunity.   The two wrongs differ only in dimensions; but the smaller of the two may well be too large for the rule of *de minimis.*

But further: Sufficient has been said to show that the posi-

tion, now in question, is opposed not only to the sense of the thing, but also to the general analogies of the law; and if maintainable at all, it must be upon purely technical grounds. The learned counsel recognizes this view, and puts his proposition distinctly upon the ground that " it consists with the maxim that the possession of one tenant in common is the possession of all." By " consists," we understand counsel to maintain that the truth of his proposition may be deduced from the maxim. The maxim, read freely, would, undoubtedly, bear out the proposition that one tenant cannot oust his co-tenant of a part of the common lands; and so read, it would also establish that one could not oust the other of the whole of the land. In other words, the maxim, if thus rendered, would establish that an ouster of one tenant by another was impossible in law. But the words of the maxim have no bearing upon the limited " impossibility" asserted, except as they establish a larger impossibility that includes it, and therefore, they do not establish the proposition, distinctively, at all. The only distinctive proposition which the letter establishes is, that one tenant in common cannot oust another in any event, inasmuch as the possession of one is the possession of the other. The conclusion is, that the maxim, read by the letter, does not establish the disputed position as such.

There is but one other way of reading the maxim, and that is juridically. Juridically, the maxim establishes that " the possession of one tenant is the possession of another in those cases only where the possession is not adverse;" and it bears upon no point of law but that. Therefore, the truth of the disputed proposition is no more established by the maxim, than the truth of the maxim is established by the dint of the proposition, supposing its truth to be given and that of the maxim to be disputed. The proposition of the maxim, as qualified, is, in part, that " an adverse possession by one tenant is an ouster of the other." The proposition of counsel begins where the other leaves off, and asserts, " but one tenant cannot by legal possibility possess any part of the land adversely, unless he possesses the whole of it adversely."

The propositions are distinct. The dialectician, trying their relations by the tests of his science, would be likely to notice that they had different subjects and different predicates; and to hold, on that technical ground, that they could not be interdependent. The two propositions "consist" with each other in one sense, for both may be true at the same time. They furthermore consist with each other for they may both be false at the same time. But the truth of the maxim, as limited, being given, the proposition that there can be no ouster of a part, may be false; therefore the truth of the proposition is not only not deducible from the maxim, but has absolutely nothing to do with it. No other technical ground has been invoked in favor of the view taken for the respondent.

A tenant in common may injure his companion by ouster, or by doing any permanent injury to the freehold; and the power to injure in either of these modes is as little affected by legal as it is by moral disabilities. Nor can it be restrained in the nature of things, except by the capacity of man to do wrong. So far as the power to injure in either of the modes stated is concerned, tenants in common stand to each in no other attitude than that of strangers. In thus acting inconsistently with the common title, the aggressing tenant puts himself outside of the pale of the relation and enters upon a work which the law of the relation forbids. In that behalf, he is thereafter his own man, and may determine for himself the dimensions of the torts he will commit. He may trespass upon the rights of his co-tenants, by permanently injuring a part of the freehold, or by laying waste the whole area at his election. He may oust his co-tenant from a part of the common estate, or carry the ouster to the maximum, by dispossessing him of the whole of it. The limited oneness of the parties, interposes no obstacle, for *quoad* the wrong doing, they are twain. When it was first found out, and adjudged that one tenant in common could oust another, we consider that the point now made for the respondent was in effect adjudged against him.

We have so far treated the question upon analogy, and with reference also to certain admitted principles governing the

relation of tenants in common; but as it is urged that these views unsettle the foundations, we consider that the occasion might not be fully met were we to dismiss the point in hand without investigating it upon authority.

To support the proposition in question, counsel cite from Coke upon Littleton, (Vol. 2, Sec. 323,) as follows: "Also, in the case aforesaid, as if two have an estate in common for a term of years, the one occupy *all* and put the other out of possession and occupation, he which is put out of occupation shall have against the other a writ of *ejectione firmæ* of the moiety," etc.   As matter of reasoning, the truth of the disputed position does not follow from the doctrine of the quotation.   In the first place, the learned writer illustrates, rather than states, a proposition; or, more exactly, he states a proposition by putting a case, and then declaring the law of it.   But as matter of mere reasoning, are we therefore to conclude that the legal truth declared is applicable to no predicament of facts except that put by way of illustration? The habit of the reason is the other way; and the true conclusion would be, that the doctrine announced was applicable to every state of facts substantially like the facts put.   Let it be stated, that " one who withholds a debt, or the whole of a debt, shall be liable to an action," would it follow, by even plausible conclusion, that an action would not lie when a part only of the debt was withheld?   Certainly not; and for the reason that the several withholdings differ merely in degree. In the statement of general rules or principles, terms of the largest comprehension are ordinarily used, but it is to be remembered, *omne major continet in se minus.*   If, then, one tenant in common cannot oust his co-tenant of a part of the common property, the warrant for it must be found elsewhere than in the passage cited from Littleton.   That citation, *proprio vigore*, does not establish the proposition, in our judgment.

But Coke, in commenting upon the citation, in the first place, states a distinction between the case of a sole occupation by one of "all" the land, accompanied by an exclusion of the other from the possession, and the case of one tenant

70

taking the whole of the profits; holding that in the one case there would be an ouster, and in the other that there would not; and then proceeds as follows: "But if he drive out of the land *any* of the cattell of the other tenant in common, or not suffer him to enter or occupy the land, this is an eject-ment or expulsion whereon he may have *ejectione firmæ* for the one moitie, and recover damages for the entirety, but not for the mesne profits." One tenant, then, may oust another by driving "any" of the cattle "out of the land;" or by not suffering him "to enter or occupy the land." The position taken here for the appellant, does not controvert that propo-sition in either one of its branches. In short, the truth of the proposition is a matter utterly foreign to the point in question; for conceding its truth, the truth of the respondent's postulate cannot be claimed by way of deduction. The word "any," as it occurs in the phrase "any of the cattle," means a part of the cattle; but as it could not be deduced from the word "any," that, if one of the tenants should drive off the whole of the other's cattle, it would be no ouster, so it cannot be inferred from the bare statement: "If one of the tenants occupies the whole of the land and excludes the other from it, there will be an ouster of the whole," that if one tenant should occupy the whole of a given part, and exclude the other from the whole of that part, that it would not be, in legal judg-ment, an ouster from the whole of that part, "whereupon he (the ejected tenant) might have *ejectione firmæ* for the one moiety" thereof. On the contrary, as matter of reasoning, the conclusion would be the other way. That is to say : the word "any," as it stands, argues that if the whole of the cat-tle should be driven out of the land, the act would, and not that it would not, amount to an ouster; and so, by parity of reasoning, the word "whole," as it stands, instead of favoring the respondent's proposition, comes but little short of demon-strating it to be fallacious.

But further : "If one tenant will not suffer the other to enter or occupy the land" (that is, the whole of the land) there is an ouster by the direct force of the letter. Now, if one tenant

will not suffer the other to enter upon or occupy any given part of the whole, he does not suffer him to enter upon or occupy the "whole" of it, and therefore, in such case, an ouster results, not merely by the methods of the reason, but by the direct force of the letter also. And so it appears, that the citation from Littleton, and the comment thereon, instead of establishing the proposition advanced for the respondent, are opposed to it; first—by necessary deduction, and in the second place—by direct statement.

The case of *Marcy* v. *Marcy*, 6 Met. 372, does not establish the doctrine contended for, but, in our judgment, might well be relied on as authority against it. But we cannot stop here to give an analysis of the case, and we shall pass it for the present, remarking merely, that the passage inadvertently cited from the opinion of Mr. Justice Hubbard as a proposition of law advanced by him, is a mere statement of a position assumed by counsel in argument. The case of *Lloyd* v. *Gordon and Wife*, 2 Harris and McHenry, 260, we have not had access to; but counsel present the following extract from the opinion; " So long as one tenant in common is possessed of any part of the land, he shall be considered in possession of the whole, unless there was a separation of a *part* by actual inclosures by the other, who also denied the title of the other to hold in common." This extract, upon which much reliance seems to be placed, instead of supporting the point made, contravenes it directly; for it states that the holding of a part by one tenant in common, will, under certain circumstances, amount to an ouster of the other therefrom, thereby showing that an ouster of the whole of a portion of the common property is not an impossible event in the opinion of the Court. We have examined the other cases cited for the respondent, and in no one of them is the point, now in hand, either presented or discussed. They do no more, in effect, than to reiterate the citations from Littleton and his commentator, previously quoted and answered.

But counsel relies upon a supposed parliamentary judgment, coinciding with the view presented by him. Considering the

great care and deliberation with which statutes affecting the common law doctrines of real property are and have been passed in the British Parliament, any expression of opinion by that body on a common law question of that character, would doubtless be entitled to great consideration. Counsel find the judgment alluded to in the third and fourth Wm. IV, C. 27, S. 12, cited in Adams on Ejectment, p. 136. The author begins by stating the maxim of the common law, that the possession of one tenant in common is *prima facie*, the possession of his companion, and that it is necessary in order to enable one to maintain ejectment against the other, that the latter should prove an actual ouster. The learned author then proceeds as follows: "Many subtile distinctions have been heretofore taken as to what acts shall be deemed to amount to an actual ouster; and it was in one case expressly decided that the bare perception of the whole profits for twenty-six years without accounting, was insufficient; but these difficulties are ended by Stat. 3 and 4, Wm. IV, C. 27, S. 12, which abrogates the maxim of the common law, and enacts that when any person entitled to any land, or rent, as coparcener, joint tenant, or tenant in common, shall have been in possession or receipt of the entirety, or more than his undivided share of the land or rent, for his own benefit or the benefit of any person other than the person entitled thereto, such possession or receipt shall not be deemed to have been the receipt of the person so as aforesaid entitled." By this statute the rule of the common law was "abrogated" in two particulars, and a new rule enacted. First: Whereas, by the common law a bare receipt of the whole, or of any lesser portion of the rents, was no ouster, the statute provided that if one of the tenants received the whole of the rents, or any more than his share of them, it should be an ouster *per se*. Second: Whereas, by the common law, possession, whether of the whole or of a part, did not *per se* amount to an ouster, it was provided that whenever the possession was of the whole, or of more than the tenant's share, it should in itself, without further proof, be deemed an ouster. Laying out of account the matter of rents, the

only common law truth which Parliament can be said to have recognized in this piece of legislation, is the maxim that the possession of one tenant in common is the possession of his companion *prima facie;* and all that Parliament did was to so limit the application of that maxim as to make a bare possession of the whole, or a bare possession of more than the tenant's share of the land, an ouster in itself. Counsel urges that as the statute makes possession of more than the tenant's share of the land an ouster, it follows, by necessary deduction, that Parliament must have been laboring under the impression that, by the common law, a possession by a tenant in common of his share, and *a fortiori* of a part less than his share, did not amount to an ouster. To this we agree. But the true consequence is larger than that, viz : that the possession of one tenant, howsoever restricted or expanded, did not in itself, in parliamentary judgment, amount to an ouster under any imaginable circumstances at common law. The result is that the statute of William IV does not recognize or assume the doctrine denied, but another and entirely distinct one, which is on all hands admitted to be a rule at common law.

It is further insisted that the idea that one tenant in common can be ousted of a part of the common property involves an absurdity ; and a diversity of extreme cases are put by way of illustration. The point made to establish the supposed absurdity is, that as the tenants cannot, in the nature of things, severally occupy or fill the same space at the same time, therefore they cannot jointly occupy the common property, except as each shall be allowed a several point to stand on—a choice of lines on which to travel over the estate, and a place where each can eat and drink, and take his needful repose, without being liable to be disturbed by his associates. We cannot see that the rule, which we are disposed to uphold, would interfere at all with the exemptions claimed ; for those limited immunities are essential to the beneficial possession and enjoyment of the common property by the tenants, and therefore each of them may claim those immunities as matter of right. They are but means to the end of joint beneficial possession.

The question of ouster by one tenant in common of another, is a question of intention to be found by the jury from the overt acts proved in the case. (*Prescott* v. *Nevers*, 4 Mason, 330; *Cummings* v. *Wyman*, 10 Mass. 468.) And if the jury should find an ouster, in an ejectment brought by one tenant against another, from evidence tending to prove merely that the defendant refused to let the plaintiff into a joint occupancy of the particular spot of ground upon which the defendant was temporarily standing or lying at the time when he was formally required so to do, or refused peremptorily to allow his associate " to occupy the same bed with him," the verdict would probably be set aside and a new trial granted. It was held in *Keay* v. *Goodwin*, 16 Mass. 1, that an exclusive occupation of a part of the land for a temporary purpose, such as piling boards and lumber, did not amount to an ouster.

But the point made for respondent may be met by authority. In 5 Bacon's Abridgment, page 299, the author, in discussing the subject of partition, states that " the bare fact that *part* of the land of which partition is sought by bill in chancery, is *adversely held* by one joint tenant or tenant in common, will not prevent the Court from taking jurisdiction to decree partition before the controversy as to title is settled at law." This statement is directly opposed to the theory that one tenant in common cannot be disseized by his companion of less than the whole. The author takes the case of an *adverse* holding of a part, and says that chancery will not delay a partition until the controversy has been settled at law. And how settled at law except by ejectment? (*Overton's Heirs* v. *Woodfolk*, 6 Dana, 374.)

*Marcy* v. *Marcy*, 6 Met. 360, previously cited, was a writ of entry to recover an undivided moiety of fifteen acres of land, parcel of a larger tract of which the parties were or had been tenants in common. One of the points made for the defendant was that there had never been any valid partition of any portion of the common property, and, therefore, that the action did not lie as to the fifteen acres. The defendant claimed, however, that there had been a partition of the whole

farm, less the fifteen acres.    The Court held that "it was unnecessary to determine what title had been acquired by the parties in consequence of the parol partition; whether they were still tenants in common, as the defendant contended, or whether they own in severalty."  Why unnecessary?  On the respondent's theory the result properly depended upon the solution of the very question which the Court thought had nothing to do with it.  It is manifest on the face of this case, not only that one tenant recovered of his co-tenant, in a writ of entry, a part of premises assumed to be undivided for all the purposes of judgment, but that the recovery was had in spite of the specific objection now taken for the respondent.

In *Stedman* v. *Smith*, 8 El. and Bl. p. 1, it appeared that the parties were coterminous proprietors, and that a wall between their several lands was the common property of the two.    It appeared further that the defendant in 1855 erected a wash-house on his own premises, the roof of which occupied the whole width of the wall along the wash-house *so far as it* was contiguous thereto; and he let into the wall a stone on which was inscribed, " This wall and the ground on which it stands belongs to Mr. Smith, 1856."  The question raised, was, whether the evidence tended to prove an ouster, and the point was decided in the affirmative.  In this case the action involved, not the whole, but a part only of the wall owned in common.  *Jackson* v. *Tibbits*, 9 Cow. 241, was an action of ejectment for one hundred and twenty-nine acres of land, parcel of a much larger tract held originally in common.  A partition had been made at an early day, and the defendant had possessed the premises demanded, for twenty years, claiming under the partition.  The suit was brought upon the theory that the partition was a nullity, and that the plaintiff therefore was a tenant in common of the one hundred and twenty-nine acres parcel of the larger tract.  The partition was held to be null, but the defendant had judgment on the ground of twenty years *adverse* possession.  This is also a direct adjudication of the point in controversy.  Wherever it is not possi-

ble for one tenant to oust his companion, it must be impossible also to possess *adversely* to him.

In *Bennett* v. *Clemence et al.*, 6 Allen 10, the parties were tenants in common of a tract of land, and the plaintiff owned a tract adjoining in severalty. The plaintiff erected a permanent building, the principal part of which stood upon his own land, but a small portion of it was on the common lands, but not enough to be used separately with any advantage to the occupant. It was held " that such an exclusive appropriation of a part of the common lands by one tenant in common, to his own use, by the erection of a permanent structure, was evidence of an ouster of the co-tenant ; " and it was stated as a general truth, that " a tenant in common may re-enter into the *part* from which he has been ousted, provided he can do so without a forcible entry or breach of the peace."

The entire correctness of these decisions is not only manifested by the principles and analogies already adduced, but also from a well settled doctrine to which we now for a moment invite attention. If one tenant in common convey a particular part of the lands held in common, to a stranger, the deed is void, or, at least, voidable, as to his co-tenant, though good against the grantor. It follows, then, that if the grantee should enter upon and occupy the part so conveyed to him, and should, furthermore, exclude the co-tenant therefrom, that the latter would have his action to be let into possession. According to *Stark* v. *Barrett*, 15 Cal. 368, " the conveyance could have no legal effect to the prejudice of the co-tenant," but " that, until partition, the grantee would be entitled to the use and possession as co-tenant, in the parcel conveyed, with the other owners." Now, if the act of exclusion, in the case put, would amount to an ouster, why should not the same act, if performed by the maker of the deed, be followed by a like consequence? No reason can be suggested except those we have previously considered and held to be fallacious.

We close the discussion on this branch of the general subject, by suggesting that the cases which have been cited, are to be regarded as so many judicial expositions of the true

meaning of the rule as stated in Littleton. By that statement, the one tenant must "occupy," as distinguished from "possess." He must also put the other "out of occupation." The aggressing tenant must occupy "all"—that is, he must actually occupy all of that from which he excludes his companion—the sole point and purpose of the author being to state that, as between tenants in common and joint tenants, there could be no ouster except one that was actual, as contradistinguished from constructive. And that Coke understood that to be the only point made in the text, is entirely manifest from the first passage in his general comment, which passage we here reproduce as it is written : " The one occupy all and put the other out of possession." These are words materially added, for " albeit one tenant in common take the whole profits, the other hath no remedie by law against him, for the taking of the whole profits is no ejectment."

Third—The remaining ground upon which it is argued that no evidence was introduced at the trial tending to prove an ouster, is, that there was none tending to prove a denial of plaintiff's title by the defendant; but, on the contrary, that the evidence was decisive to show that his title as tenant in common was formally and persistently acknowledged.

In case an ouster is sought to be proved, as between tenants in common, on the ground that the defendant being in the sole possession of the land, refused to pay to his co-tenant his just share of the rents and profits, the refusal, unaccompanied with a denial of the title of the co-tenant, will not amount to an ouster. The case of *Fisher* v. *Prosser*, 1 Cowp. 217, cited for the respondent, goes to that conclusion only. The case at bar is of an entirely different impression. On grounds already stated, the plaintiff had a right of entry upon the demanded premises ; and that right was denied and resisted—the defendant being at the time in the sole occupation of the sixty acres. Littleton gives the rule applicable to the facts of this case in the passage previously cited ; and the ouster therein declared consists solely in a putting " out of possession and occupation ;" and it is well settled that exclusion from possession

71

and putting out of possession are equivalents in law. Coke (Sec. 323) makes no account of denial of title, in the sense in which the phrase is used in the objection; for he says if one tenant in common "will not suffer the other to enter and occupy the land, this is an ejectment or expulsion." These definitions make the ouster to consist in overt acts; and if the co-tenant is either expelled or excluded from the land by reason of them, he having the right to remain, or to enter upon it, all the facts are ascertained which the definitions contemplate. And it may be added, that such overt acts practically deny the only "title" directly involved in the transaction, viz: the then present right of entry. The admission made by the defendant of the plaintiff's title, whether studied or otherwise, in our judgment, amounts to nothing. *Allegans contraria non est audiendus.* A disseizor cannot qualify his own wrongs. (*Ricard* v. *Williams*, 7 Wheat. 59.) Exactly stated, the defendant admitted the right of property, which was several, and which no hostile action on his part could presently affect, but denied the right which was joint and which it was within his power to thwart, viz: the right of immediate possession. If the defendant had denied the several right of property and allowed the plaintiff to enter, no ouster would have resulted; and it follows that a mere verbal admission of that right cannot defeat an ouster wrought out upon other and sufficient grounds. "The defendant positively refused to let the plaintiff into possession," and therein he denied to the plaintiff the benefit of the title which he admitted to be fully vested in him.

There is a diversity of methods by which it may be proved that one co-tenant has been ousted by another, and that now in question is one of the number, and is not to be confounded with the others. The authorities are decisive, that when the co-tenant makes a proper demand, not for his share of the rents and profits, but to be let into possession, and the request is refused, and the tenant upon whom the demand is made continues in possession thereafter, such possession will be considered as adverse, even though there was no formal denial of

title.   The result of the cases is well presented in 2 Green-leaf's Evidence, Sec. 318 : "An ouster in such case, therefore, must be proved by acts of an adverse character; such as claiming the whole for himself, denying the title of his companion, *or refusing to permit him to enter,* and the like.

The respondent insists that the demand made by the plaintiff was substantially defective, for the reason that the precise share of the plaintiff in the rancho was not stated.   The answer of the defendant shows that he knew at the time his answer was filed, that the plaintiff owned an undivided half of the rancho as tenant in common with him; and the evidence tended to prove that he knew of the relation at the time of the demand, and that the plaintiff was the principal owner.   If the defendant knew that he and the plaintiff were tenants in common, and that plaintiff was the principal owner, the jury, in view of those and the other facts in the case, might very well have concluded that the defendant knew the precise extent of the plaintiff's interest at the date of the demand, if the fact was material to be proved.

It is further insisted that the demand must be considered as abortive, for the alleged reason that the plaintiff demanded the sole possession of the premises—the demand made involving a notice to quit.   The demand, so far forth as it was in writing, required the defendant " to let the plaintiff into possession," etc.   The words " let into possession," when occurring in a connection like the one in which they were used, do not, in our judgment import a notice to quit; but if the question admits of any doubt, still it appears by the record that the plaintiff during his interview with the defendant stated to him verbally that he wanted " to be let into the possession of the land with the defendant," and " the defendant did not accede to said demand," but " positively refused to let the plaintiff into possession."   When the written demand and the verbal explanation are considered in connection with each other, it is apparent, that the claim of the plaintiff was not for the sole but the joint possession of the premises demanded.

It is further insisted for the respondent that inasmuch as the

Mexican grant under which both parties claim title was of two square leagues, to be located within certain exterior boundary lines, containing six square leagues, and inasmuch as no survey and location had been made before the commencement of the action, it cannot be considered that the defendant had been guilty of an ouster, even though all the legal views heretofore expressed in this opinion should be admitted or assumed to be correct.

It is urged that in *Ferris* v. *Coover*, 10 Cal. 590, and in *Mahoney* v. *Van Winkle*, 21 Cal. 552, the defendants were mere trespassers without title; and the point made, is, that a distinction should be taken between the case of a defendant with title and that of a defendant without title.

The parties are tenants in common. The defendant, in his answer, recognizes that relation as existing between himself and the plaintiff, and he cannot properly claim any right, or any exemption, except such as are due to him under the law by which that relation is governed. The defendant, by the rule of the relation, is entitled to possess the land, and every part of it, in common with the plaintiff; and the plaintiff has the right to possess the land, and every part of it, in common with him; but if either the one or the other prevents his associate from entering upon the land, or any part thereof, he performs an act which the law of the relation forbids, and the wrong would be 'none the less a wrong for the reason that it was perpetrated by a coproprietor. We do not find it at all essential to consider whether the original grant to Castro and Pacheco passed the legal title to them on the delivery of the grant. It is enough that it passed to the grantees an immediate and vested interest in the quantity of land therein specified, (*Fremont* v. *The United States*, 17 How. 542,) with the joint right to hold and possess to the larger boundaries until survey. (*Ferris* v. *Coover*, 10 Cal. 590 ; *Mahoney* v. *Van Winkle*, 21 Cal. 552 ; *Thornton* v. *Mahoney*, 24 Cal. 569.) In short, the record finds that the relation of tenants in common exists between the parties, and that it has existed since the 10th day of March, 1860. We must accept that relation as a

fact, and our only office in error is to adjudge upon the rights of the parties by the tests which the law of that relation supplies.

Judgment reversed and new trial ordered.