## H. W. CARPENTIER *v.* M. MENDENHALL *et als.*

OUSTER OF TENANT IN COMMON BY CO-TENANT.—A finding, in a special verdict, in an action of ejectment brought by a tenant in common against a co-tenant who is in the occupancy of the land held in common, that the plaintiff demanded of his co-tenant to be let into the immediate possession of the same, and that the co-tenant refused, is not a finding of an ouster, either in terms or by legal conclusions.

THE FACT OF OUSTER OF A CO-TENANT MUST BE FOUND.—The law will not presume from acts of ownership by one tenant in common, nor from his refusal to allow a co-tenant to enter, nor from both combined, that there was an intent to oust, but the intent to oust must be established as a fact by the finding of the jury.

OUSTER OF CO-TENANT MAY BE INFERRED FROM DEMAND AND REFUSAL.—If a tenant in common demand of his co-tenant, who is in the occupancy of the common

property, to be let into possession, and the co-tenant refuses and does not give any explanation of his refusal, the Court would be justified in directing or advising the jury to infer an ouster.

PURCHASE OF AN INTEREST IN LAND BY ONE WHO HAS TAKEN POSSESSION WRONG-FULLY.—If one who takes possession of land unlawfully afterwards becomes a tenant in common in the ownership of the same, the moment he becomes such tenant in common his possession loses its hostile character, and the presumption is that it remains amicable until the contrary is made to appear.

DAMAGES IN EJECTMENT.—In ejectment by a tenant in common against a co-tenant who took possession wrongfully, but afterwards became a co-tenant, plaintiff cannot in that action recover damages for the period while the defendant was unlawfully in possession.

DAMAGES IN EJECTMENT AGAINST CO-TENANT.—A tenant in common, in ejectment against his co-tenant, cannot in that action recover damages or mesne profits for the period during which the possession of the co-tenant was not adverse.

DAMAGES AFTER OUSTER OF CO-TENANT.—A tenant in common who is ousted by a co-tenant, may recover damages in ejectment from the time of the ouster, according to his right.

APPEAL from the District Court, Fourth Judicial District, Contra Costa County.

The facts are stated in the opinion of the Court.

*E. R. Carpentier*, for Appellant.

*Thomas A. Brown*, and *John Reynolds*, for Respondents.

By the Court, SHAFTER, J.

This is an action of ejectment. The trial was by jury, who returned a special verdict upon issues submitted to them by the Court. Judgment was entered upon the findings in favor of the defendants. The plaintiff appealed, and at the July term, 1864, the judgment was reversed by this Court and a new trial ordered, on the authority of *Carpentier* v. *Webster*. The appellant moves that the order be vacated, and for judgment in his favor upon the special verdict.

The jury have found: First—That the plaintiff, on and prior to the first day of September, 1858, was, and that he still is, the owner in fee of the equal undivided half of the Rancho of San Ramon, embracing the premises described in the complaint, and of a further undivided interest equal to three hundred and twenty acres. Second—That all the

defendants, with the exception of Stout, Slankard and White, entered into possession on the day before named. That Stout took possession July 14, 1862, White on the 14th of May, 1860, and Slankard on the 3d of January, 1863—the day when the complaint was filed. That all the defendants have continued in possession since the date of their respective entries. Third—That none of the defendants had any title to the demanded premises prior to the 9th of March, 1860, nor any right to the possession of the same nor any part thereof; but that on that day they, with the exception of Stout, White and Slankard, became tenants in common with the plaintiff. That Stout became such tenant July 14, 1862; White, May 14, 1860; and Slankard, January 3, 1863. Fourth—That the plaintiff, prior to the commencement of the action, and between the 15th and 20th of December, 1862, served upon each of the defendants, personally, the following written demand:

"SAN RAMON, December 20, 1862.

"SIR: You will please to take notice that the lands and premises now occupied by you are part and parcel of the Rancho San Ramon, of which I am the principal owner, and that I demand to be let into the immediate possession and enjoyment of the same, and every part and parcel thereof.

"Respectfully yours,

"H. W. CARPENTIER."

Fifth—The rental value of each of the parcels occupied by the respective defendants.

Two questions have been discussed by counsel—first, is the plaintiff entitled to judgment on the special verdict? and if so, then, secondly, for what amount by way of damages?

The second question it will be unnecessary for us to consider, for we are satisfied that the special verdict does not lay an adequate foundation for a judgment in the plaintiff's favor on the main question involved.

The trouble with the verdict is, that it does not find an ouster, either in terms or by legal conclusion. A demand is found, and a refusal matching the demand; but "demand and

refusal" does not fall within any definition of "ouster," as that term is used in the law governing the relation of tenants in common.    Neither acts of ownership by one tenant in common, nor refusal to allow co-tenants to enter, necessarily work a disseizin.    The law will not presume from either the one or the other, nor from both combined, that there was an intent to oust.    That intent must be established as a fact by the finding of the jury.    Conversion is one of the points to be established in actions of trover; but it is settled that "demand and refusal" is not conversion, but only evidence of it for the consideration of the jury.    In the absence of all explanation, the Court would be justified in directing or advising the jury to infer a conversion, or an ouster in a case like the one at bar, from the fact of demand and refusal; but the inference is to be made by the jury and not by the Court. · (2 Stark. Ev. 683; *Prescott* v. *Nevers*, 4 Mason, 330; *Cummings* v. *Wyman*, 10 Mass. 468; *Carpentier* v. *Webster*, 27 Cal. 524.)

But it is insisted that the verdict finds an ouster of the plaintiff by all the defendants, except Stout, White, and Slankard, prior to the demand and refusal, and independent of it, to wit: their unlawful entry upon the premises in September, 1858—a year and a half before the rights of the defendants as tenants in common were acquired.

It is said, in support of this position, that the possession acquired in 1858 was by disseizin, and it is added, "that the possession never lost its hostile character;" and it is upon this assumption of fact that the whole argument turns.    But the verdict demonstrates that the possession unlawfully taken in 1858 did lose its hostile character, prima facie, on the 9th of March, 1860, when, as the verdict finds, they became tenants in common with the plaintiff.    The moment the defendants became tenants in common with the plaintiff, their possession lost its hostile character by the legal effect of the fact; and it cannot be presumed that the possession was otherwise than amicable thereafter, until the contrary is made to appear.

It is further claimed that an ouster is manifested on the face of the answers; and here we are referred to *Harrison* v. ·

*Taylor et al.*, 33 Missouri, 211.   The doctrine of that case is that when a defendant, sued in ejectment by a tenant in common, states in his answer that "he holds the premises adversely against all persons," the action will not fall on the ground that there was no demand made previous to the action. The case at bar is not within the rule.   The answers here contain no averment or admission of adverse possession on the part of any of the defendants, but deny the ouster alleged, in terms.

Though we have declined to pass upon the question of the amount of damages to which the plaintiff is entitled, for the reason that on this record it does not appear that he is entitled to any, still, as the case must go back for a new trial, under the order already made, we deem it proper to state the principles by which the question of damage must be controlled.

As to damages which accrued prior to March 9th, 1860, traceable to the ouster of 1858, they cannot be recovered in this action.   For the reasons already stated, that ouster has become unavailable as a basis of recovery in chief, and it is therefore unavailable in this action as a ground for the recovery of damages resulting from it.   A party may recover specific real property, "with damages or without them," (Prac. Act, Sec. 64,) but when he sues to recover such property with damages, he cannot recover damages if he fails to recover the property.   The Practice Act states an exception to this rule, but the case at bar is not within it.   (Prac. Act, Sec. 256.)

As to damages during the interval between the 9th of March, 1860, when the defendants, or most of them, became tenants in common with the plaintiff, and the demand and refusal of December, 1863, neither damages nor rents and profits can be recovered in this suit, for in legal judgment the possession of the defendants during that time was not adversary, but amicable, and in strict keeping with the title.

As to damages that have accrued since the demand and refusal, if it shall turn out as matter of fact that the refusal was not supported by some legal right to refuse—having in

fact no other or better basis than the assumption that the plaintiff had no right of entry on the premises—then the plaintiff will be entitled to recover damages according to his right, and the plea of the Statute of Limitations will not bar the claim.

Motion for judgment on the verdict denied.

Mr. Justice RHODES expressed no opinion.