ELIAS EDINBURG *vs.* ALLEN–SQUIRE COMPANY.

Worcester.    September 23, 1936. — January 31, 1938.

Present: RUGG, C.J., FIELD, DONAHUE, & LUMMUS, JJ.

*Conversion. Practice, Civil,* Appeal; Auditor: report, objections to report.

An appeal from the allowance of a motion for judgment upon the report of an auditor whose findings of fact were to be final did not bring to this court for review a denial of a motion for recommittal of the report; and objections, annexed to the report, to findings and refusals to find presented no questions in addition to those apparent on the face of the report.

The owner of a mill building committed no act of conversion merely by locking the building while machinery of a tenant at sufferance was therein and later removing and storing the machinery in the exercise of a right which was his under an agreement between him and the tenant, where there was no demand by the tenant for the property or for an opportunity to remove it, and no refusal by the owner.

TORT. Writ in the Superior Court dated September 4, 1935.

The defendant's motion for judgment upon an auditor's report was allowed by *Whiting*, J.

The case was submitted on briefs.

*M. M. Taylor*, for the plaintiff.

*G. H. Mirick, D. Whitcomb, & P. R. O'Connell*, for the defendant.

FIELD, J. This is an action of tort for conversion of machinery and other personal property. The case was referred to an auditor whose findings of fact were to be final. After the auditor had filed a report the trial judge "found" for the defendant on this report and allowed the defendant's motion for judgment thereon. The plaintiff appealed.

The auditor's report was in effect a case stated (*Robinson* v. *Lyndonville Creamery Association*, 284 Mass. 396, 398), and the action of the judge thereon an order for judgment. The case falls, therefore, within one of the classes of cases in which appeal is available. G. L. (Ter. Ed.) c. 231, § 96.

The appeal, however, does not bring before us for review the order of the trial judge denying the plaintiff's motion to recommit the report. And the plaintiff's objections, annexed to the report, to findings by the auditor and to his failure to make findings present no question for decision in addition to those apparent on the face of the report. *Carbonneau* v. *Cavanaugh*, 290 Mass. 139, 140.

The auditor in his report, after making subsidiary findings of fact, states: "In my view of the law applicable to these facts, I have reached the conclusion that there was no actual conversion on the part of the defendant and I so find." This statement evidently means that the conclusion was based wholly on subsidiary facts found. It is not merely a ruling of law on such facts. It is, rather, a finding of fact, though deducible from other facts found and involving questions of law. *Duggan* v. *Wright*, 157 Mass. 228, 231. *W. T. Tilden Co.* v. *Densten Hair Co.* 216 Mass. 323, 327. *Dobias* v. *Faldyn*, 278 Mass. 52, 58.

*MacLeod* v. *Davis*, 290 Mass. 335, 338. The subsidiary findings support this ultimate finding.

The auditor made in substance the following specific findings: The plaintiff, prior to August 24, 1929, was in possession of a mill building on Cherry Street, Spencer — herein referred to as the Cherry Street mill — and was carrying on there the business of manufacturing cloth. In the building were certain machinery, equipment and other personal property — to a part of which this action relates. The plaintiff's ownership of the machinery and equipment is not disputed. He was the owner of the other personal property. The Cherry Street mill was subject to a mortgage to the defendant. The defendant, on August 24, 1929, foreclosed its mortgage by sale and took title to the real estate under a foreclosure deed. On the forenoon of August 30, 1929, the defendant gave the plaintiff written notice to remove all personal property owned by him from the premises "before noon, Saturday, August 31, 1929, and [to] vacate the premises, as we shall lock the doors to the factory on the premises, at that time." On that day the plaintiff "began to get ready to vacate the mill by taking machines apart in anticipation of their removal, and from that time on he was in process of dismantling and removing the machines and equipment until the doors of the mill were locked at noon on September 28." On August 30, 1929, the plaintiff brought a bill in equity against the defendant "to restrain the defendant from locking up the mill and impeding the removal of the machinery and other personal property therefrom." A "temporary restraining order issued and remained in effect until September 9," 1929. On that day the bill in equity came on for hearing before a judge of the Superior Court. Both parties were represented by counsel. An "agreement was orally reached in regard to the removal of the property" and the bill in equity was dismissed. The auditor found that the attorney for the plaintiff had authority to make this agreement and it is not disputed that the attorney for the defendant also had such authority. On the same day the attorney

for the defendant sent a letter to the attorney for the plaintiff which set forth this oral agreement.

The oral agreement as set forth in the letter was as follows: "Under the understanding reached Edinburg upon the payment of $31.25 to the Allen–Squire Co. is to have the right for one week's time to remove his effects and the machinery, rightful possession of which he claims, from the premises on Cherry Street, Spencer. If at the end of one week's time the property is not removed he may upon the payment of an additional sum of $31.25 have another week's time within which to remove said property. In other words, the Allen–Squire Co. is to permit him to remove the machinery and his property without molestation upon their part. . . . In the event that Edinburg does not pay the stipulated sums as provided herein, to wit, at the rate of $31.25 in advance per week, the Allen–Squire Co. may follow such remedies as it sees fit either with respect to the removal of the property from its premises or locking up the doors, and it will look to Mr. Edinburg for any charges or expenses incurred by it in case it has to remove from its premises."

On September 10, 1929, the plaintiff paid the defendant one week's rent and on September 17 paid another week's rent. The plaintiff made no further weekly payments. During these two weeks he removed some of the machinery and personal property from the Cherry Street mill.

"On Saturday noon, September 28, Mr. Allen, the general manager of the defendant corporation went with a mechanic to the Cherry Street mill and locked up the main entrance by putting a padlock thereon and nailed up the door in the cellar which was the only other entrance, thus preventing the plaintiff from entering the building to remove the remaining machinery and personal property. . . . Prior to the time of locking the doors of the mill on September 28, 1929, some of the machinery and equipment had already been taken . . . [away] in trucks, and at the time the doors were locked the work of moving the machinery was in progress. The locking of the doors pre-

vented the plaintiff from proceeding further with his work of moving. . . . The rest of the machines and other personal property remained at the Cherry Street mill."

"Within two or three days after the mill was locked up, the plaintiff sent his minor son to the office of the defendant to ask for the key to the padlock on the mill door. From a girl working in the office at a desk young Edinburg inquired if Mr. Allen was in and said he came for the key to the mill. He was told by the girl that Mr. Allen was not in. The next day the plaintiff sent him to Mr. Allen's home on the same errand but Mr. Allen was not in. No further move was made by the plaintiff or his attorney toward regaining possession of the property, nor was any demand made by him for its return, nor did the defendant or . . . [its] attorney invite the plaintiff to remove the property from the Cherry Street mill, or communicate with the plaintiff in any way with respect to the property or its removal, until April 12, 1931, when the defendant sent the plaintiff the following letter which was duly received. . . . 'The writer has been down to your mill twice but did not find you either time, and are writing to ask if you will kindly stop here at the office and the writer will give you the key for the Cherry St. factory so that you can start moving the machinery that belongs to you. Trusting that you will attend to this promptly,' . . . The plaintiff made no reply to this letter. . . . A few days later the defendant sent its master mechanic and several assistants to the Cherry Street mill and removed the remaining machinery and other personal property to . . . [a] factory . . . in Spencer a short distance from the Cherry Street mill where it was placed in storage. Certain of the machines were removed in their entirety and others which required to be dismantled before moving were dismantled and moved." The moving "was done in a reasonably careful manner. . . . After the removal of the property . . . matters between the plaintiff and the defendant stood *in statu quo* without any communication between the plaintiff and the defendant until this suit was commenced."

Clearly, on the facts found, there was no conversion by

the defendant of the plaintiff's property prior to September 9, 1929, when the oral agreement was entered into between the parties, or even before September 28, 1929, when the defendant locked the mill.  After the oral agreement was entered into, the rights of the parties were governed thereby so far as they came within its terms.  It is the natural construction of the agreement that the plaintiff was to have two weeks within which to remove his property from the Cherry Street mill if, as was the fact, he made the stipulated payments.  But even if this agreement is to be construed as meaning that the plaintiff was to have a longer time within which to remove such property, if he continued to make weekly payments in advance, he made no such weekly payments.  In either event the provisions of the agreement relating to the defendant's remedies became applicable before September 28, 1929.

Even apart from the agreement, merely locking the doors of the mill building and retaining possession of the key without any further exercise or claim by the defendant of dominion over the plaintiff's property would not constitute a conversion.  *Poor* v. *Oakman,* 104 Mass. 309, 318.  *Lawyers Mortgage Investment Corp. of Boston* v. *Paramount Laundries Inc.* 287 Mass. 357, 360.  And consent by the owner of property to an act, which otherwise might be found to amount to a conversion, would preclude such a finding.  See *Hills* v. *Snell,* 104 Mass. 173, 177–178.  The oral agreement of September 9, 1929, must be interpreted as meaning that, after the time covered by the stipulated payments made by the plaintiff had expired, the defendant could lock the doors of the mill or remove the plaintiff's property from the premises at the expense of the plaintiff.  The acts of the defendant on September 28, 1929, in locking the main entrance to the mill and nailing up "the door in the cellar which was the only other entrance" were within the scope of the agreement.  Such acts, without more, would not amount to a conversion.  Of course the agreement did not contemplate that the plaintiff should be deprived permanently or unreasonably of possession of his property.  But, from the time the mill building was locked until the plaintiff's property was re-

moved therefrom, the defendant, on the facts found, did nothing, not contemplated by the agreement, either to prevent the plaintiff from removing his property from the building, or, in any other way, to exercise or claim dominion over such property. The facts found show no demand by the plaintiff for the property or for opportunity to remove it, and no refusal by the defendant. The principle that demand and refusal need not be shown to prove a conversion (see *Lawyers Mortgage Investment Corp. of Boston* v. *Paramount Laundries Inc.* 287 Mass. 357, 361) has no application where, as here, apart from demand and refusal, the detention of the property was not wrongful. See *Fairbank* v. *Phelps,* 22 Pick. 535, 539; *Johnson* v. *Couillard,* 4 Allen, 446; *Edmunds* v. *Hill,* 133 Mass. 445, 446–447; *Baker* v. *Lothrop,* 155 Mass. 376, 378; *DeYoung* v. *Frank A. Andrews Co.* 214 Mass. 47; *Hellier* v. *Achorn,* 255 Mass. 273, 284–285. Furthermore, it does not appear that the removal of the property by the defendant from its premises was not within the scope of the agreement. No conversion is shown by the auditor's subsidiary findings.

It follows that the order allowing the defendant's motion for judgment — in effect an order for judgment for the defendant — must be affirmed.

*So ordered.*