[Civ. No. 15149.   Second Dist., Div. Three.   May 20, 1946.]

MERICIA GONZALEZ DE HARLAN, Respondent v. WARREN E. HARLAN, Appellant.

Button, Herzog & Butts for Appellant.

A. J. O'Connor and George J. Hider for Respondent.

SHINN, J.—Plaintiff is the daughter-in-law of defendant, Warren E. Harlan, being the wife of his son Richard. Plaintiff and defendant own as joint tenants a residential property in Beverly Hills. The lot was purchased by defendant and the house was built in 1937, principally with the money of defendant, his contribution, including the amount of a loan on the property, being some $15,000, although plaintiff and her husband contributed the sum of $7,100, which was needed to complete the house. The property was placed in joint tenancy by deed of February 15, 1938, by defendant, as grantor, to himself and plaintiff, as grantees, and on the same day an agreement was entered into by plaintiff and defendant, reading as folows:

"This Agreement made and executed at Los Angeles, California, this 15th day of February, 1938, by and between Warren E. Harlan, hereinafter designated as First Party, and Mericia Gonzalez de Harlan, hereinafter designated as Second Party, both of the City and County of Los Angeles, State of California; Witnesseth: Whereas, First Party is a widower at present about 67 years of age and is the owner of and resides at No. 1136 North Doheney Drive, in said city and county of Los Angeles, state aforesaid, in a two-story stucco, Spanish type residence dwelling which he has recently constructed and completed, which premises are more particularly described as folows: [Description.] Whereas, Said Second Party is the daughter-in-law of said First Party and, together with her husband, Richard Harlan, the son of First Party, resides with said First Party in said home aforesaid; and Whereas, said Richard Harlan is the only child of said First Party; and Whereas, the said parties, together with said Richard Harlan, son of said First Party and the husband of said Second Party, have resided together for a number of years; and Whereas, by reason of such association between the parties there has arisen and now exists mutual feelings of full faith, trust and confidence; and Whereas, said First Party is the owner of said house and desires to convey the same to said Second Party and himself as joint tenants for the joint and equal use, enjoyment, and advantage of said Second Party and said Richard Harlan, her husband aforesaid, and himself, reserving to himself, however, certain exclusive rights, privileges and options as more fully hereinafter set out; and Whereas, said First Party is further will-

ing to convey said property to Second Party and himself
jointly, as joint tenants, with the provision that if he, said
First Party, should decease, in that event said Second Party
shall use, enjoy and otherwise hold said property for the
joint and equal benefit of herself and her husband, Richard
Harlan, the son of said First Party, with the right in said
Second Party on the death of said First Party to sell or other-
wise dispose of said property if she shall see fit and thereupon
apportion the proceeds of the sale thereof equally between
herself and said Richard Harlan; and Whereas, said Second
Party is agreeable to the same; Now, Therefore, in consider-
ation of the mutual promises and covenants of the parties
hereto one to the other, as hereinafter set forth, it is hereby
mutually agreed as folows: 1. That First Party does this day
by Grant Deed in Joint Tenancy transfer and convey the
said real estate and home hereinbefore described and referred
to, to himself and said Second Party as joint tenants, with
sole right of survivorship, subject only to: current taxes and
assessments, if any; restrictions and rights of way; and a
Trust Deed encumbrance in favor of Home-Builders' Loan
Association of Pomona, California, in the approximate prin-
cipal sum of $1500.00. 2. That during the lifetime of said
First Party he shall have the exclusive right and privilege
of selling, mortgaging, renting, encumbering, or in any other
manner disposing of said real estate, and said Second Party
agrees to execute any and all documents which may be neces-
sary or required in the exercise of any of First Party's rights
and privileges herein granted. 3. Upon the death of First
Party and consequent vesting of the title to said real estate in
said Second Party as sole survivor, said Second Party shall
have the sole and exclusive right and authority to sell, assign,
transfer, encumber, mortgage, rent, hypothecate, or other-
wise deal with said property, without any let or hindrance
by any person, provided, however, that, upon the sale, trans-
fer, or other disposition of said property by Second Party,
she shall thereupon divide any proceeds thereof, after the
payment of any necessary expenses incurred by reason thereof,
equally between herself and her husband, Richard Harlan,
son of First Party. During the lifetime of First Party he
shall at all times have the right to occupy said home, together
with Second Party, and use and enjoy same jointly with said
Second Party. 5. The parties hereto by this agreement do

hereby intend to express their full confidence and trust one in the other and the execution and delivery of the deed by First Party to said Second Party, hereinbefore referred to, is expressly based upon said trust and confidence and upon reliance that Second Party will carry out the covenants and conditions on her part herein expressed to be performed. 6. It is the further intention of these parties by this agreement to protect said Richard Harlan, the son of First Party and who is now the husband of Second Party, so that notwithstanding that by said deed herein referred to said Second Party will upon the death of First Party acquire title to said real estate, nevertheless, said Second Party shall share equally with said Richard Harlan the proceeds derived from any sale or other disposition of said real estate by Second Party. [Etc. Signatures and acknowledgment.]''

For a number of years plaintiff and defendant occupied the premises as their home, and plaintiff's husband also lived there, except at intervals. Defendant, a widower, remarried in November, 1941. Plaintiff and her husband separated in December, 1943, and the husband unsuccessfully sought an annulment of their marriage (*Harlan* v. *Harlan*, 70 Cal.App. 2d 657 [161 P.2d 490]). The premises were leased to one tenant from December, 1941, to April, 1943, and to other tenants from April, 1943, to May, 1944. During the first of these periods plaintiff retained and occupied living quarters in the house. The rentals were used for the joint benefit of plaintiff and defendant. When the last tenants left, defendant and his wife moved into the house and plaintiff left, taking the furniture with her.

Plaintiff brought this action for an adjudication of the rights of herself and defendant, and for partition of the property. Defendant answered and also filed a cross-complaint, in which he alleged that plaintiff had acquired her joint tenancy interest through the exercise of fraud and undue influence upon him and he asked that the deed be cancelled and that plaintiff be required to convey to him any claimed interest in the property. The decree denied defendant any relief on his cross-complaint, confirmed plaintiff's joint tenancy interest in the property, awarded her judgment against defendant in the amount of $50 per month from May, 1944, while he remains in the property and until a sale thereof, made the same a lien upon defendant's interest, and

directed that the property be sold and the proceeds used to pay expenses of sale, the balance of an encumbrance on the property, the total sum due plaintiff at the rate of $50 a month, as aforesaid, and that the remainder be equally divided between plaintiff and defendant. There was an inter-. locutory as well as a final decree, and the defendant gave notice of appeal from both.

Defendant makes no attack upon the findings which negative the allegations of fraud and undue influence of his cross-complaint. He challenges the decree only as it directs a sale of the property, division of the proceeds, and awards plaintiff a judgment for money, which was made a lien upon his interest.

The deed was given for a consideration of one dollar ''and other good and valuable consideration,'' receipt of which was acknowledged, subject to a trust deed of $1,500 and ''covenants, conditions, restrictions, reservations, rights of way, and easement of record,'' and not upon any other condition. It established a joint tenancy title in plaintiff and defendant.

The money judgment of $50 per month from May, 1944, to date of sale was based upon a finding that defendant and his wife moved into the premises in May, 1944, and ever since said time defendant has denied plaintiff the right to any use, enjoyment or occupancy of the premises, or any part thereof, all without her consent. This finding is supported by the evidence. Plaintiff testified that she was ordered out of the house by defendant in May, 1944; that she went back in November, 1944, and was again ordered out of the house by defendant, who told her that the house was not hers, and by her husband, who threatened her life. She gave other testimony which, if true, would have. furnished additional proof that she was barred permanently from any use of the premises.

The court may order a partition of real property owned in joint tenancy. (Code Civ. Proc., § 752.) It is the settled law that the right to have partition is not absolute and that it may be waived by contract. (*Asels* v. *Asels*, 43 Cal.App. 574 [185 P. 419], and cases collected in 132 A.L.R. 672.) Defendant relies upon the agreement hereinbefore quoted to establish a waiver by plaintiff of the right to have the property partitioned or sold. It is argued that under paragraph numbered 4, defendant has the right to occupy the premises during his lifetime, and that this

right stands in the way of a partition, since it would be destroyed by a sale of the property. Defendant did reserve this right by agreement when he created plaintiff's joint tenancy interest, but it was not an unconditional right. Plaintiff also had the right to occupy the home, by virtue of her right as a joint tenant, and also by the agreement. The rights of the parties were mutual and equal under the deed and under the agreement. Neither had a right to occupy the premises to the exclusion of the other.

Although it was provided by paragraph 4 that the right of joint occupancy would continue during the lifetime of first party [defendant], there was a limitation expressed in paragraph 2, under which defendant might at any time rent or encumber the property or sell or otherwise dispose of it. Paragraph 2 may be construed as an agreement upon plaintiff's part to join in renting, encumbering or selling the property upon the demand of defendant that she do so. She did not, however, relinquish the right to her half of any amount or amounts that might be received as rents, or as the proceeds of any encumbrance or sale. The rentals were shared equally, or as agreed, and when the encumbrance was increased, the balance, after the payment of certain charges, was divided equally between plaintiff and defendant.

If defendant had performed the agreement upon his part, paragraphs 2 and 4 might reasonably have been construed as a waiver by plaintiff of the right to have the property sold in a partition action. But defendant has not performed; he has breached the agreement by ejecting plaintiff from the property and denying her all use and enjoyment thereof. ▮ The exclusive privilege which was granted him to make a sale of the property, according to his wishes, and the privilege of living in it, gave him no right to retain it and to occupy it to the exclusion of plaintiff.

▮ Defendant was 67 years of age at the time he gave the deed, and the home was planned for the use of the three persons. Plaintiff dutifully attended to the wants of defendant, and their lives were placid, until disturbed by defendant's remarriage and the marital rift between plaintiff and her husband. The events which followed defeated the purpose of the parties to establish a permanent home. That purpose is clearly stated in the agreement, and the provisions relied upon by defendant cannot be construed so as to defeat

plaintiff's right to have a partition sale in the event she should be excluded from all use and occupancy of the property. The right which was guaranteed her to use the property as her home was a consideration for her own promises, including her agreement that defendant should have the option to sell the property at any time. The covenants of the parties were mutual and dependent. Defendant may not deprive plaintiff of the sole consideration for her promises and at the same time hold her to those promises. He has by his wrongful conduct deprived himself of the right to stand upon the agreement as a waiver of plaintiff's right to have a sale of the property in partition. It is unfortunate that the parties have not been able to adjust their differences outside of court. It appears that they were given this opportunity by the trial judge and that defendant would concede nothing. He maintains that he has the exclusive right to the use and occupancy of the home during his lifetime, or until he sees fit to sell it, a position which is clearly unsupportable.

Defendant concedes that one joint tenant has no right to exclude the other from the joint tenancy property. He argues only that the one excluded may not recover damages, but ''he can only recover the right to be let into joint possession of the property with his cotenant.'' But even if the right to joint possession was legally enforceable, plaintiff's only effective remedy was the one she pursued. The conduct of defendant and his son had made it impossible for plaintiff to live under the same roof with them. It was a situation that could not have been cured by a judgment which ordered defendant to allow plaintiff to move into the premises and occupy them with him. Defendant had no right to resist a sale of the property in partition except that which inured to him by virtue of the contract, and he forfeited that right by his violation of his own obligations and his prevention of further performance in accordance with the terms of the agreement.

Defendant does not contend that if plaintiff had a right to recover damages by reason of her eviction the claim could not be adjudicated in the partition action, and we express no opinion upon that point of procedure. Plaintiff was clearly entitled to recover damages computed at $50 per month. There was evidence to sustain the finding that the property had a rental value of $100 per month.

The interlocutory decree fully adjudicated the rights of the parties, and it declared that a sale of the property was neces-

sary. It also declared that a sale would be ordered if the parties were unable to agree upon a settlement of the matters in controversy. The final decree was a reiteration of the matters contained in the interlocutory decree; it recited that the owners could not agree upon a settlement of their respective claims, that defendant continued to insist that he was the sole owner of the property, and it appointed commissioners and ordered them to sell the property, the proceeds of the sale to be applied as hereinbefore stated.

The judgments are affirmed.

Desmond, P. J., and Wood, J., concurred.