[L. A. No. 19782.   In Bank.   Dec. 30, 1946.]

M. ZASLOW et al., Respondents, v. HELENE KROENERT
et al., Appellants.

Kaplan & Livingston, Alfred L. Armstrong and Harold D. Berkowitz for Appellants.

Ernest A. Oswald and Richard A. Haley for Respondents.

EDMONDS, J.—Marcus Zaslow, who obtained title to certain real property by the foreclosure of a street assessment bond, sued Helene Kroenert and John Chapman for trespass and conversion. At the time the controversy arose, Mrs. Kroenert was the grantee in a tax deed made by the state. The appeal from the judgment in favor of Zaslow primarily presents for decision the question as to the rights of the parties under their respective titles.

The allegations of the complaint in the count charging trespass are that Marcus Zaslow, individually and as attorney in fact for Henry F. Zaslow, had enjoyed the quiet and peaceable possession of the premises from 1935 to May 15, 1944. On that date defendants forcibly broke into and entered the premises. A "No Trespassing" sign was posted and the locks changed. Because of the acute housing shortage in the area, plaintiff has been unable to find housing

facilities to his great and irreparable injury. These acts were committed "with wanton and malicious motives and with a reckless disregard of the rights and privileges of plaintiff", resulting in hardship and oppression. Moreover, they occurred while a quiet title action between the same parties involving the same property was under submission and before judgment. As a result of the forcible entry and the continued use of the premises, the plaintiff suffered damage in the amount of $9,000.

Another count of the complaint incorporates by reference most of these allegations, and charges that the plaintiff was lawfully and peaceably possessed of certain personal property located on the premises. The defendants "unlawfully and without right or color of right" took this property from the premises and converted it to their own use, damaging the plaintiff in the sum of $3,500. The relief asked is for restoration to possession of the premises, and a judgment in the amounts of $100 per month from May 15, 1944, $14,500 for general damages, and $5,000 for punitive damages.

By answer the defendants denied generally and specifically all of the allegations in each count. The evidence presented upon the issues as framed by these pleadings is without substantial conflict. It appears that in 1931, the real property in controversy was deeded to the state for delinquent taxes. Four years later, Marcus Zaslow went into possession of it following the foreclosure of a street bond issued under the Improvement Act of 1911. He testified that he was the owner of the property; that he bought and paid up all of the outstanding street assessment bonds, "Second Street . . . to the Ocean Front." After he foreclosed a street bond, he obtained a judgment quieting his title to the property in fee, subject to the sale for taxes. He paid some, but not all, of the delinquent taxes under a ten-year plan. About this time he conveyed the land to Henry F. Zaslow, his son, and it appears that during later years title passed back and forth between them. However, it is not charged that there has been any deficiency of title by reason of these transactions which bars the cause of action pleaded on behalf of Marcus Zaslow individually and as attorney in fact for his son.

In 1941, while Marcus Zaslow was in possession of the property, he leased the property from the state at a monthly rental of $8. The instrument provided that in the event of a sale of the property by the state while the lease was in effect,

the lessor might cancel it as of the date of sale and, under such circumstances, the lessee would be entitled to a refund of any unearned portion of rental which might have been paid in advance. On October 7, 1943, Zaslow leased the property to Dorothy Dobis "for a couple of months . . . until she was able to find a bigger place for her sister and herself." The sublessee entered into possession and remained until on or about May 15, 1944. Her rent was paid to and including May 21, 1944.

Meanwhile, the taxes on the property remained due and unpaid and in November, 1943, Helene Kroenert purchased the property at a tax sale for $4,700, overbidding Marcus Zaslow's offer of $4,600. It was stipulated during the trial that "the State of California, acting by and through the Tax Collector of the County of Los Angeles, did, on November 19, 1944, execute and deliver to Helene Kroenert the tax deed on the property here involved." This deed, the parties agreed, conveyed to Helene Kroenert all of the right, title and interest which the state acquired in 1931 by reason of the nonpayment of taxes for the years 1927 through and including 1931. The stipulation also recited that there was an overcharge of taxes assessed during these years which amounted to a total of eighty-three cents.

The State Controller, on December 10, 1943, notified Marcus Zaslow of the tax sale and of the cancellation of his lease agreement as of November 19th. An application for refund of unearned rent was enclosed. This notice and any rights of Helene Kroenert were ignored by Marcus Zaslow, who continued to receive rentals under the sublease.

On January 26, 1944, Helene Kroenert filed an action to quiet title to the property (*Kroenert* v. *Zaslow, post,* p. 878 [176 P.2d 8]) naming various defendants, including Marcus Zaslow. During the pendency of this action, Dorothy Dobis and her sister, at the request of Zaslow, endeavored to find another apartment. Meanwhile, Marcus Zaslow moved into the premises and slept there for a few days. One morning after Zaslow had left to go to his business, Mrs. Dobis, through Chapman, found other quarters and vacated the premises, leaving the doors open and unlocked. According to Chapman's testimony, she told him that, as the rent was paid for two more weeks, he could have possession of the property. Immediately Chapman, acting as agent for Helene Kroenert, entered the premises, took possession of them, posted

"No Trespassing" signs, and changed the locks on the doors.

Marcus Zaslow, upon returning that evening, was unable to gain entrance. He returned a few days later and found Chapman there. Zaslow asked him who put the lock on a hamburger stand which occupied part of the premises and Chapman replied, "I took it off . . . With a hammer. I knocked it off and put mine on." According to Zaslow's testimony he understood Chapman to say, "Don't you dare to come close. You will find your head knocked off." Zaslow thought Chapman had a sledge hammer in his possession at the time. Chapman, on the other hand, denied that he threatened or even spoke to Zaslow on that occasion. But on the following day, according to Chapman, Zaslow and his attorney asked permission to get into the place. Chapman replied, "No, you can't get in the house. You will have to see the attorney." Chapman said he changed the locks because there had been three robberies there.

Later, Mrs. Kroenert's attorney sent a letter, dated May 19th, to Marcus Zaslow, notifying him that he could secure his personal property left on the premises by applying at the attorney's office. If the goods were not called for within 10 days, the letter stated, they would be put in storage to be held at Zaslow's expense. Although Zaslow denied receiving the letter, he admitted that Mrs. Kroenert's attorney showed it to him when he visited his office about a month and one-half or two months later. The record shows no demand for the return of the personal property, the value of which, Zaslow testified, was about $3,500. The rental value of the house was $40, and of the hamburger stand, $35 a month.

The trial court found that substantially all of the allegations of the complaint were true. Specifically, it declared that Mrs. Kroenert and Chapman, as her agent, forcibly broke and entered the premises without the consent, express or implied, of Zaslow and have, since that date, continued to use and occupy them to his damage in the amount of $1,400. The court also found that the defendants converted plaintiff's personal property to their own use to his damage in the sum of $1,200. Punitive damages in the sum of $300 were awarded plaintiff upon a finding that the breaking and entering of the premises and the conversion of the personal property was done "wantonly and maliciously and with reckless disregard of the rights and privileges of the plaintiff."

As grounds for reversal of the judgment entered upon

these findings, the appellants rely upon a number of points. Of determinative importance is their contention that, assuming the property was conveyed to Zaslow upon the foreclosure of the street bond, he was then a tenant in common with Mrs. Kroenert and cannot maintain an action in trespass against her. Zaslow asserts that there was no such tenancy because of the overcharges in the assessments made against the property. He argues that the tax validation statute of 1943 (Stats. 1943, p. 1993; 3 Deering's Gen. Laws, Act 8443) is not applicable to the tax deed to Mrs. Kroenert because his rights intervened between the commission of the errors in the tax levy and the effective date of the statute. But assuming the validity of the tax deed, he maintains that, as a tenant in common, he is entitled to past and prospective damages by reason of his ouster. Accordingly, he argues, he has the right to elect to sue for damages past and prospective, waive the invasion, and consent to the continued occupancy of the land by them. Upon this theory, the damages awarded by the trial court for trespass are proper. Judgment was also properly awarded for the conversion of the personal property, Zaslow contends, and the findings as to the damages suffered by him by reason of the conversion, and also as punishment for the wrongdoing, are supported by the evidence.

The record shows that the alleged over-levy which is the basis of the charge that the title conveyed by the state is invalid, resulted in raising more money for the various tax years than actual budget requirements, because of a failure of the board to anticipate revenues from solvent credits and personal property taxes. This over-levy amounted to a total of eighty-three cents in the taxes assessed against the property for the years in question. But this court recently held that a minor over-levy "did not invalidate the entire tax levy and must be deemed to have been waived by failure to enter an appropriate objection." (*Compton* v. *Boland*, 26 Cal.2d 310, 313 [158 P.2d 397].) Applying that rule, the deed to Mrs. Kroenert conveyed a valid title regardless of the effect of the tax validation statute of 1943, and the questions raised in *Miller* v. *McKenna*, 23 Cal.2d 774 [147 P.2d 531], as to whether the tax validation statute applies to cure jurisdictional requisites or to deprive a person of vested property rights, are not here present. Accordingly, as Zaslow and Kroenert were each a purchaser of the entire parcel of land at a tax sale, they became tenants in

common upon the vesting of title from the respective taxing agencies. (*Monheit* v. *Cigna*, 28 Cal.2d 19, 27 [168 P.2d 965].)

■ Each tenant in common equally is entitled to share in the possession of the entire property and neither may exclude the other from any part of it. (*Krum* v. *Malloy*, 22 Cal.2d 132, 135 [137 P.2d 18] ; *Ochoa* v. *McCush*, 213 Cal. 426, 431 [2 P.2d 357] ; *Wood* v. *Henley*, 88 Cal.App. 441, 452 [263 P. 870].)

■ Upon proof of ouster and a demand for entry by the cotenant out of possession and a refusal by the cotenant in possession the ousted cotenant is entitled to recover common possession of the premises. (*Phelan* v. *Smith*, 100 Cal. 158, 167 [34 P. 667] ; *Carpentier* v. *Webster*, 27 Cal. 524, 563 ; *Cardoza* v. *Machado*, 46 Cal.App.2d 809, 811 [117 P.2d 31] ; see 14 Am.Jur. 143.) ■ And one tenant in common ousted by another is entitled to recover damages resulting from the ouster, which ordinarily amounts to his share of the value of the use and occupation of the land from the time of the ouster. (*Miller* v. *Myers*, 46 Cal. 535, 539 ; *Carpentier* v. *Mitchell*, 29 Cal. 330, 334 ; *Carpentier* v. *Mendenhall*, 28 Cal. 484, 488 [87 Am.Dec. 135] ; *Cardoza* v. *Machado, supra*, p. 812 ; *Estergren* v. *Sager*, 39 Cal.App.2d 401, 404 [103 P.2d 177] ; see 14 Am. Jur. 143 ; 7 Cal.Jur. 367.)

■ An ouster, in the law of tenancy in common, is the wrongful dispossession or exclusion by one tenant of his cotenant or cotenants from the common property of · which they are entitled to possession. ■ The ouster must be proved by acts of an adverse character, such as claiming the whole for himself, denying the title of his companion, or refusing to permit him to enter. Actual or constructive possession of the ousted tenant in common at the time of the ouster is not necessary. (*Cardoza* v. *Machado, supra*, p. 811, citing *Carpentier* v. *Webster, supra*, p. 563, and 62 C.J. 426, § 32.)

■ The acts of Mrs. Kroenert in the present case were sufficient to constitute an ouster, and Zaslow is entitled to recover common possession of the premises and damages for loss of use. Mrs. Kroenert denied Zaslow's title. Her agent, Chapman, acting under her direction, changed the locks on the doors, posted "no trespassing" signs on the property, and denied Zaslow admittance upon demand. Whether or not the sublessee consented to the possession by Kroenert is of no significance. The wrong or ouster took place when Mrs. Kroenert denied Zaslow's title and refused him common possession.

■ However, a reversal is required because the award of $1,400 damages for the ouster finds no support in the evidence. The rental value of the premises was $75 a month. Mrs. Kroenert, through Chapman, took possession of the premises on May 15, 1944, and the judgment was rendered on September 25th of the same year. The rental value for that period would only amount to about $325, and although special damages were pleaded. no proof was offered in this regard. Furthermore, it is clear from the briefs, the findings, and the decision in *Kroenert* v. *Zaslow* (*post*, p. 878 [176 P.2d 8]) that the case was tried, and damages awarded, upon the theory that Mrs. Kroenert had no interest in the property because her tax deed from the state was invalid.

■ Relying upon *Slater* v. *Shell Oil Co.*, 58 Cal.App.2d 864 [137 P.2d 713], Zaslow contends that he may force a sale of his interest in the property upon the appellants. In that case, the plaintiff recovered a judgment in a prior action for damages caused by the defendant's act of laying pipe across his land. He then sued in ejectment on the same cause of action. The court held that the former judgment was a bar, saying: ". . . the right to sue for ejectment and damages . . . are nevertheless independent and inconsistent causes of action based upon the same invasion of the same right," and where "a party elects to sue for damages past and prospective he is deemed to have waived the invasion and consented to the continued occupancy of the land." But this rule will not permit Zaslow to waive all of his interest in real property, in effect abandon his property to the cotenant, and force a sale on Mrs. Kroenert. Where, as here, there is no showing that a coowner cannot regain common possession of the premises and that the ouster was permanent, damages for loss of use afford the plaintiff adequate relief. (See *Miller* v. *Myers, supra; Carpentier* v. *Mitchell, supra;* see 63 C.J. 1049 et seq.)

■ Stated generally, "conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." (*Gruber* v. *Pacific States Sav. & Loan Co.*, 13 Cal.2d 144, 148 [88 P.2d 137]; see *Aronson* v. *Bank of America etc. Assn.*, 9 Cal.2d 640, 643 [72 P.2d 548].) ■ The liability of one in possession of real property for the conversion of personal property which he finds upon it, depends, in most cases, upon a determination of whether the conduct of the defendant indicates an assumption of control or ownership over the goods. It is clear that, under

some circumstances, refusal of one in possession of real property to permit, upon demand, the owner of chattels which were left there to remove his goods, constitutes conversion. (*Gruber* v. *Pacific States Sav. & Loan Co., supra,* p. 148; *Edwards* v. *Jenkins,* 214 Cal. 713, 720 [7 P.2d 702]; *Wolfe* v. *Willard H. George, Inc.,* 110 Cal.App. 532, 535 [294 P. 436]; *Atwood* v. *Southern Calif. Ice Co.,* 63 Cal.App. 343, 345 [218 P. 283]; see 148 A.L.R. 650; 131 A.L.R. 171; 65 C.J. 41.) ██ And if the possessor of the real estate appropriates the chattels to his own use in obvious defiance of the owner's rights, he is liable to the owner for the conversion of them. (*Perkins* v. *Maier & Zobelein Brewery,* 134 Cal. 372, 375 [66 P. 482]; see Prosser on Torts, p. 108; 148 A.L.R. 655; 131 A.L.R. 174.)

However, every failure to deliver is not such a serious interference with the owner's dominion that the defendant should be required to pay the full value of the goods. (See Prosser on Torts, p. 106.) ██ And the act of taking possession of a building and locking it does not, of itself, constitute a conversion of the personal property therein. ██ Nor does the permission of the possessor of the realty by which personal property is allowed to remain upon the premises make him liable for the goods. (*Poor* v. *Oakman,* 104 Mass. 309; *Edinburgh* v. *Allen-Squire Co.,* 299 Mass. 206 [12 N.E.2d 718]; *Lawyer's Mtg. Inv. Corp.* v. *Paramount Laundries,* 287 Mass. 357 [191 N.E. 398]; See *Persson* v. *McKay Coal Co.,* 200 Wash. 75 [92 P.2d 1108]; Prosser on Torts, § 15; 131 A.L.R. 167 et seq.) ██ To establish a conversion, it is incumbent upon the plaintiff to show an intention or purpose to convert the goods and to exercise ownership over them, or to prevent the owner from taking possession of his property. Thus, in *Poor* v. *Oakman, supra,* a person rightfully took possession of a building and put a new lock on the door. He knew that the owner of some furniture then in the building had a key to the old lock. It was held that, in the absence of any evidence tending to prove a claim to the furniture, or any act which hindered the owner from removing it, as the contest was for the possession of the building, the possessor of the real estate was not liable for conversion of the furniture. Substantially the same rule was applied in *Lawyers' Mtg. Inv. Corp.* v. *Paramount Laundries, supra,* where the court decided that the act of taking possession of a building and keeping it locked did not, of itself, constitute a conversion of the machinery in it. And ordinarily the courts have declared that one rightfully in pos-

session of real property who removes, to a warehouse or other place, chattels found on it belonging to another, does not assert ownership or control over them to the extent of making him liable for conversion. (See 131 A.L.R. 172, and cases cited therein; Prosser on Torts, pp. 102, 103.)

In the present case, the court found only that Mrs. Kroenert and Chapman "took and carried away all the personal property and effects" of Zaslow, such taking being without his consent, express or implied. Admittedly, what Chapman did in this regard was to place the goods in storage; there is no evidence tending to prove that either he or Mrs. Kroenert otherwise exerted any dominion over Zaslow's personal property in denial of or inconsistent with his rights. If, upon demand for the return of the chattels, they had prevented the removal of the goods, such acts would have constituted evidence of a conversion. But here the controversy between the parties concerned the occupancy of the house; no demand was made for the return of the personal property. While there is no evidence showing any conduct amounting to conversion, there is proof that Chapman, as the agent of Mrs. Kroenert, acted as custodian of the goods, recognizing Zaslow's complete title and right to them. The defendants did not use the goods. About a month and one-half after Mrs. Kroenert, by Chapman, took possession of the realty, she stated in a letter either received by or shown to Zaslow, that he could secure possession of his personal property by applying at the attorney's office. Zaslow neither said nor did anything in response thereto.

Where the conduct complained of does not amount to a substantial interference with possession or the right thereto, but consists of intermeddling with or use of or damages to the personal property, the owner has a cause of action for trespass or case, and may recover only the actual damages suffered by reason of the impairment of the property or the loss of its use. (See Prosser on Torts, pp. 102, 103, 107; Rest., Torts, §§ 217, 218, 219.) As Zaslow was a cotenant and had the right of possession of the realty, which included the right to keep his personal property thereon, Chapman's act of placing the goods in storage, although not constituting the assertion of ownership and a substantial interference with possession to the extent of a conversion, amounted to an intermeddling. Therefore, Zaslow is entitled to actual damages in an amount sufficient to compensate him for any impairment

of the property or loss of its use. ■ But as the evidence shows $3,500 as the highest value placed upon the goods and it is undisputed that they were not damaged while in storage for about four months, the amount awarded by the judgment has no support in the evidence.

For these reasons, the judgment is reversed with directions to the trial court to redetermine the amount of damages caused by the ouster and the trespass to the personal property.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.