[No. D013290. Fourth Dist., Div. One. May 4, 1992.]

Estate of KATHRYN MARLOW HUGHES, Deceased.
DANICE DIEMOZ, Petitioner and Respondent, v.
BEN G. PATTON, as Administrator, etc., Objector and Appellant;
SYLVIA HUGHES, Individually and as Executrix, etc., Claimant and
Respondent.

**COUNSEL**

Harvey Von Wantoch for Objector and Appellant.

Don L. Harrington for Petitioner and Respondent.

Susan Stricklin Wilson for Claimant and Respondent.

**OPINION**

**WIENER, Acting P. J.**—When Kathryn Marlow Hughes died on February 12, 1975, she and her husband, George Ervin Hughes, had been living in her separate property residence at 3438 Browning Street in San Diego. The house was worth about $45,000. Upon her death George, as a spouse omitted

from Kathryn's November 15, 1965, will admitted to probate, acquired a one-third interest in the property pursuant to then Probate Code section 70.[1] The named beneficiaries under the will, Kathryn's two children, Victoria Wiseman and Charles Marlow, received the balance in equal shares. George, and later when he remarried, with his wife Sylvia, continued to live in the residence. Although they paid the monthly installments on the note secured on the property, they paid no additional rent. When George died on November 26, 1986, Sylvia remained in the house until July 31, 1988, living there rent-free until July 22, 1987, when the court ordered her to pay a monthly rental of $350.

This appeal by Ben G. Patton as the administrator with the will annexed of Kathryn's estate, asks us to decide whether the probate court correctly determined that Danice Diemoz, the former special administratrix of that estate, had no liability even though she failed to obtain a reasonable rental for the property during the 10 years she was the estate's personal representative. The probate court did not surcharge her and her first and final account was approved. The appeal also questions the court's determination that Sylvia Hughes, both individually and in her fiduciary capacity as executrix of the estate of George E. Hughes, was not liable for the rent. As we shall explain, even though we agree with most of the probate court's factual findings and legal conclusions we disagree with its ruling that the conduct of George as a cotenant in possession of the residence never constituted an ouster of the remaining cotenants. Because this ruling was the basis for the court's conclusion that no rent was due from either George, or later from his estate or from Sylvia, we must reverse the order for further proceedings consistent with this opinion.

## I

No particular purpose is served by our setting out the lengthy procedural history of this case and the inordinate time it has taken to determine the interest of a surviving spouse in a residence owned by his deceased wife. One can only ponder why it has taken about 15 years to determine that as a pretermitted heir George, and now his estate, is entitled to a one-third interest in Kathryn's net estate when that conclusion appears to have been self-evident shortly after Kathryn died. Perhaps what occurred here only proves the spirit of Dickens' Bleak House and its celebrated case of Jarndyce v. Jarndyce is still with us, notwithstanding court delay reduction statutes and revised probate procedures. But rather than ruminating on the delay, and what the parties did or did not do in their attempt to resolve this dispute, we are better served by examining the report filed by David R. Allen, the

---

[1] All statutory references are to the Probate Code unless otherwise specified.

court-appointed referee to assist the court with respect to the various issues raised by the pleadings (§ 11002). The court approved Allen's report, the underpinning for the order challenged in this appeal, following a noticed hearing in which the interested parties participated.

## II

Danice Diemoz was appointed the special administratrix of Kathryn's estate on April 22, 1977. Pursuant to a court order she was replaced by Ben G. Patton on May 14, 1987. The referee and later the probate court recognized that but for the application of former section 581[2] she would have been required to charge a reasonable rental for the property and her failure to have done so would have resulted in her liability. The report reflects that had a reasonable rental been charged against George, his one-third interest in Kathryn's estate would have been reduced by $84,275.87. And even though Kathryn's modest residence was reappraised in January 1990 at $256,000, about five times its value fifteen years earlier, the court's decision not to offset the accrued rent from George's one-third interest materially affected Kathryn's two children, the other beneficiaries of her estate who have since assigned their interest to James M. Kinder, the aggrieved party for whose benefit Patton appeals.

■ The report explains, and we believe correctly, that where a devisee of a solvent estate comes into possession of his or her inheritance before distribution, the devisee cannot be ejected by the administrator after the time for filing creditor's claims has expired. Because an administrator does not have the right to possession, the administrator can collect neither rent nor damages. (*Estate of Toler* (1959) 174 Cal.App.2d 764, 775 [345 P.2d 152]; *Estate of Dow* (1947) 82 Cal.App.2d 675, 681-682 [186 P.2d 977].) Thus, had George been the sole heir, the administrator could not have charged him with rent or damages in lieu thereof.

George's status as a cotenant does not change that result. ■ Absent an ouster a cotenant out of possession has no right to recover the rental value of the property from a cotenant in possession. (*Teixeira v. Verissimo* (1966) 239

---

[2]Section 581 provided in pertinent part:

". . . After the time to file or present claims has expired he [the executor or administrator] is not entitled to recover the possession of any property of the estate from any heir who has succeeded to the property in his possession, or from any devisee or legatee to whom the property has been devised or bequeathed, or from the assignee of any such heir, devisee or legatee, unless he proves that the same is necessary for the payment of debts or legacies, or of expenses of administration already accrued, or for distribution to some other heir, devisee or legatee entitled thereto." (Added by Stats. 1931, ch. 281, 581, p. 619, repealed by Stats. 1987, ch. 923, § 35, p. 2982.)

Cal.App.2d 147, 155 [48 Cal.Rptr. 496] citing *Zaslow* v. *Kroenert* (1946) 29 Cal.2d 541, 548 [176 P.2d 1].) "In order for a cotenant who is not in possession to recover the rents and profits, or the value of possession, from the cotenant in possession, he must establish that there has been an ouster . . . ." (5 Miller & Starr, Cal. Real Estate 2d (1989) Holding Title, § 12:7, p. 109; see also 4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 271, p. 469.) Thus, the crucial issue here is whether the probate court correctly decided George's conduct, including both his occupancy of the property and the court proceedings he instituted, did not constitute an ouster.

## III

### A.

■ "An ouster, in the law of tenancy in common, is the wrongful dispossession or exclusion by one tenant of his cotenant or cotenants from the common property of which they are entitled to possession." (*Zaslow* v. *Kroenert, supra,* 29 Cal.2d 541, 548.) Whether there has been an ouster is a legal question. Where the facts are disputed we must defer to the trial court's factual findings but we must nonetheless decide the legal issue de novo.

Sometimes the facts will make it clear an ouster has occurred. For example, in *Zaslow* v. *Kroenert, supra,* the trial court and later the appellate court had no difficulty deciding that changing the locks on the doors, posting "no trespassing" signs on the property and denying the cotenant admittance on demand was an ouster. (29 Cal.2d at p. 548.) The facts, however, are not always so easy, and sometimes it is quite difficult for the cotenant in possession to decide whether there is an obligation to account to a cotenant or cotenants not in possession. "The practical borderline between privileged occupancy of the whole by a single cotenant and unprivileged greedy grabbing which subjects the greedy one to liability to his cotenants is not crystal clear." (4A Powell, The Law of Real Property (1982) § 603, p. 610.)

The problems associated with the difficulty of establishing an ouster prompted the California Law Revision Commission in 1983 to recommend a statutory procedure to simplify the process. Citing *Brunscher* v. *Reagh* (1958) 164 Cal.App.2d 174 [330 P.2d 396] and *De Harlan* v. *Harlan* (1946) 74 Cal.App.2d 555 [168 P.2d 985] the commission first explained that in California "in order for the cotenant in possession to be held to account for a proportionate share of the use value of the property, the cotenant must forcibly exclude or prevent use by the cotenant out of possession." (17 Cal. Law Revision Com. Rep. (1984) p. 1028.) It then recommended a statute "so that a tenant out of possession of property may establish an ouster and

recover damages, without the need to show that the tenant in possession has forcibly excluded or prevented use of the property by the tenant out of possession." (*Ibid.*) Adopting the recommendation in 1984 the Legislature enacted Civil Code section 843 permitting a cotenant out of possession to make a written demand for concurrent possession of the property. An ouster is established if within 60 days after service of the demand, "the tenant in possession does not offer and provide unconditional concurrent possession of the property to the tenant out of possession." (Civ. Code, § 843, subd. (b).)

Our discussion of the legislative history of Civil Code section 843 is not to criticize the special administratrix or the beneficiaries for failing to use this provision, but rather to emphasize the difficulties associated with determining when an ouster has occurred. ■ The decision is particularly difficult in a case like the one before us where the conduct of the cotenant in possession for a substantial period consisted solely of his residing in the estate property, manifesting neither an intent to share possession nor to deprive other cotenants from sharing possession. In this analytical setting where the cotenants out of possession have the burden of establishing an ouster, the referee and later the court properly decided that absent any evidence George actually excluded Victoria or Charles, it could not find an ouster. The court also correctly determined that Charles Marlow's untimely filed declaration stating an ouster had occurred, using conclusionary language similar to the language contained in the reported cases, was insufficient for a finding of ouster. We therefore agree with the court that "George . . . did not physically oust VICTORIA and CHARLES nor [was there] any request to permit them to occupy the premises with him, . . ."

### B.

We also dismiss Patton's suggestion an ouster was unnecessary because any effort by Kathryn's children or later by Kinder to share possession with George would have been an idle act and accordingly was not legally necessary. Patton draws this argument from *Bank of America* v. *O'Shields* (1954) 128 Cal.App.2d 212 [275 P.2d 153] where the appellate court in considerably different circumstances excused a demand for possession, describing it as an idle act. (*Id.* at p. 218.) However, *Bank of America* v. *O'Shields, supra,* 128 Cal.App.2d 212 is factually and legally distinguishable. In *Bank of America,* the defendant in possession of estate property was neither an heir nor a devisee of the property and therefore did not come under section 581. (At p. 217.) Moreover, unlike this case the defendant was ordered to pay a reasonable rental for occupying estate property. It was she who was urging the absence of a prior demand as an affirmative defense in

order to set aside the court-imposed rental obligation. It was in this context the appellate court rejected the defendant's contention that rent could not be ordered without a prior demand for possession, using the phrase it would have been an idle act to have done so. (At p. 218.) *Bank of America* v. *O'Shields, supra,* 128 Cal.App.2d 212, is therefore not persuasive precedent on the issue before us.

IV

The more troublesome question is whether the referee and later the court correctly analyzed the effect of George's community property petition filed on September 15, 1982, and his section 1080[3] petition subsequently filed on November 19, 1982, alleging that because the residence was community property he was entitled to 100 percent of the property as the surviving spouse. Under this theory Kathryn's two children did not acquire any interest in the property. The referee dealt with this issue in the following manner:

"Although George apparently did not physically oust VICTORIA and CHARLES nor did he refuse any request to permit them to occupy the premises with him, does the fact that GEORGE filed a petition seeking to have the entire property set aside to him as community property amount to ouster or exclusion? Although no cases were found dealing with this question, it is difficult to see how it could do so, on policy grounds. Where a co-tenant has an unquestioned right to an undivided part interest in property and a colorable claim to the entire property it is difficult to see how he could proceed more reasonably than to seek a judicial resolution of the matter. He should be encouraged not to resort to self-help and should not be penalized (by being held liable to his co-tenants for rent) by seeking (even unsuccessfully) to establish his claim to the entire property in a peaceable manner."

Although there is a certain appeal to the referee's rationale we believe it is at odds with the underlying concept of ouster. As noted earlier, at common law ouster was established by a cotenant's unambiguous conduct manifesting an intent to exclude another cotenant from gaining or sharing possession of jointly owned property. ■ Here George manifested a similar intent by categorically alleging in his petitions that he was the sole owner of the property and that Kathryn's two children had no interest in the property. On this basis we conclude the petitions were the functional equivalent of changing locks or posting "no trespassing" signs telling a cotenant out of possession that he or she may not enter the premises. It is one thing for the cotenant in possession to remain silent, but quite another for the cotenant to

---

[3]Section 1080 was repealed by Statutes 1988, chapter 1199, section 56.5, p. 3906, effective July 1, 1989.

seek legal redress claiming entitlement to all the property to the exclusion of other claimants.

Support for this position is found in *Zaslow* v. *Kroenert, supra,* 29 Cal.2d 541 where the court said an ouster is "proved by acts of an adverse character, such as *claiming the whole for himself, denying the title of his companion,* or refusing to permit him to enter. Actual or constructive possession of the ousted tenant in common at the time of the ouster is not necessary. [Citations.]" (*Zaslow* at p. 548, italics added.) "[A]n action by a tenant in common against his cotenant to be admitted into the possession, a denial in the answer of the plaintiff's title and right of entry is equivalent to an ouster." (*Miller* v. *Myers* (1873) 46 Cal. 535, 538; see also *Phelan* v. *Smith* (1893) 100 Cal. 158, 167 [34 P. 667].) George's petitions here, comparable to the pleadings in *Miller,* constituted an ouster.

In reaching this conclusion we disagree with the referee's observation that interpreting George's action in this manner penalizes the cotenant in possession because it will trigger an obligation to pay rent. Whenever an ouster occurs the rental obligation accrues. Consequently the manner of its accrual is irrelevant provided the cotenant in possession reasonably understands the effect of his or her behavior. In this case where George was represented by counsel when he filed his petition, we believe he should suffer the detriment in addition to receiving any potential benefit associated with his petition.

In addition, the fact that ouster may occur in a peaceful, nonaggressive manner through lawful means is consistent with the policy underlying the 1984 legislation resulting in the enactment of Civil Code section 843. More significantly, however, ouster furnishes the tenant in possession a reciprocal benefit since it starts the time in which the tenant in possession will hold the property adversely. "While there is a presumption that the possession of one cotenant is amicable and permissive, and not adverse to his cotenants, this presumption is not conclusive. Thus, under certain circumstances, the exclusive possession of one cotenant can 'ripen' into title against the other cotenants if the occupying cotenant otherwise satisfies all the requirements for title by adverse possession." (5 Miller & Starr, Cal. Real Estate 2d, *supra,* § 12:9, p. 113.) The ouster by one cotenant of others can result in the tenant in possession obtaining title to the property by adverse possession. (See, e.g., discussion in *Dimmick* v. *Dimmick* (1962) 58 Cal.2d 417 [24 Cal.Rptr. 856, 374 P.2d 824].)

Our conclusion that George's community property and section 1080 petitions constituted an ouster does not necessarily mean that his estate and/or Sylvia are liable for the rental accruing from the date the community

property petition was filed. There may be other facts which will be presented to the trial court on remand which will affect the outcome of this case. The court may establish an equitable estoppel or waiver in light of the heirs' failure to seek a partition of the property, particularly where the delay and the substantial increase in the property's value have conferred an unexpected benefit to Kinder. There is, of course, the further possibility that George's estate may take a different tactical position on retrial, asserting his right to the property on a theory of adverse possession since he began to hold the property in a hostile manner from the date he filed his community property petition. If it should prevail, the matter of rent, the subject of this appeal, will become moot.

## DISPOSITION

Order reversed. The parties to bear their respective costs for this appeal.

Todd, J., and Benke, J., concurred.